No. 26-3015

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

E.V., M.F.E.,

*Appellees,*

v.

KEVIN RAYCRAFT, ET AL., DIRECTOR OF THE DETROIT FIELD OFFICE FOR U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,

*Appellants.*

On Appeal from the U.S. District Court
for the Northern District of Ohio
No. 4:25-cv-2069 (Pearson, J.)

## BRIEF FOR APPELLANTS

PAPU SANDHU
*Assistant Director*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin
Station
Washington, DC 20044

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

TYLER J. BECKER
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

STATEMENT OF JURISDICTION ....................................................... 3

STATEMENT OF THE ISSUES ............................................................ 3

STATEMENT OF THE CASE ................................................................. 3

    I. Statutory Framework ................................................................... 3

        A.      Expedited Removal is a Critical Enforcement Tool
to Remove Certain Aliens While Providing Aliens
with a Robust Process to Assert a Persecution or
Torture Claim ...................................................................... 3

        B.      The Secretary has Broad Discretion to Grant and
Terminate Parole Which is Not an Admission ............. 10

    I. Factual Background and Procedural History ........................ 11

        A.      Petitioners' Parole Expires and DHS Issues Orders
of Expedited Removal ....................................................... 10

        B.      The District Court Granted Injunctive Relief and
Ordered Respondents to Place Petitioners in
Removal Proceedings and Provide Bond Hearings ...... 14

SUMMARY OF ARGUMENT ............................................................. 17

STANDARD OF REVIEW .................................................................... 19

ARGUMENT ........................................................................................... 20

    I. The Government Is Likely to Succeed on the Merits ............. 20

        A.      Multiple Jurisdictional Bars Prohibit District-
Court Review of Petitioners' Challenge to
Expedited Removal ........................................................... 20

        1.       8 U.S. C. §§ 1252(a)(2)(A) and (e)......................20

        2.       8 U.S. C. § 1252(g) ...............................................26

        3.       8 U.S. C. § 1252(b)(9).........................................29

    B.     Even Assuming the District Court had Jurisdiction, Petitioners are Properly Subject to Expedited Removal as Arriving Aliens Paroled at Ports of Entry .........................................................................31

  II.    The Remaining Equitable Factors Weigh Strongly in the Government's Favor .............................................................40

  III.   The Court Should Vacate the District Court's Detention Holding and Remand to Address that Issue .........................47

CONCLUSION ..............................................................................48

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

**CASES**

*Abney v. Amgen, Inc.*,
443 F.3d 540 (6th Cir. 2006)...........................................................................40

*Akhtar v. Gonzales*,
450 F.3d 587 (5th Cir. 2006)...........................................................................36

*Barney v. Rogers*,
83 F.3d 318 (9th Cir. 1996)..............................................................................35

*Bondi v. VanDerStock*,
145 S. Ct. 857 (2025).......................................................................................37

*Branch v. Smith*,
538 U.S. 254 (2003)..........................................................................................34

*Brumme v. INS*,
275 F.3d 443 (5th Cir. 2001)...........................................................................26

*Coalition for Humane Immigrant Rights (CHIR) v. Noem*,
805 F. Supp. 3d 48 (D.D.C. 2025)...............................14, 17, 31, 39, 43

*Department of Homeland Security v. Thuraissigiam*,
591 U.S. 103 (2020).........................................................................9, 33, 42

*D.T. v. Sumner Cnty. Schs.*,
942 F.3d 324 (6th Cir. 2019)...........................................................................40

*Doe v. Noem*,
152 F.4th 272 (1st Cir. 2025)...........................................................................11

*Duarte v. Mayorkas*,
27 F.4th 1044 (5th Cir. 2022)..........................................................................32

*Elgharib v. Napolitano,*
  600 F.3d 597 (6th Cir. 2010) .................................................28

*Hamama v. Adducci,*
  912 F.3d 869 (6th Cir. 2018) .................................................20

*Hartman v. Acton,*
  613 F. Supp. 3d 1015 (S.D. Ohio 2020) ........................... 41, 42

*Higuchi Int'l. Corp. v. Autoliv ASP, Inc.,*
  103 F.4th 400 (6th Cir. 2024) ..............................................19

*J.E.F.M. v. Lynch,*
  837 F.3d 1026 (9th Cir. 2016) ..............................................30

*Jazz Pharms., Inc. v. Kennedy,*
  141 F.4th 254 (D.C. Cir. 2025) .............................................36

*Jennings v. Rodriguez,*
  583 U.S. 281 (2018) .........................................................9, 10

*Kaplan v. Tod,*
  267 U.S. 228 (1925) .........................................................1, 33

*Khan v. Holder,*
  608 F.3d 325 (7th Cir. 2010) ...............................................26

*Landon v. Plasencia,*
  459 U.S. 21 (1982) ..............................................................35

*Leng May Ma v. Barber,*
  357 U.S. 185 (1958) .................................................33, 34, 35

*Loper Bright Enters. v. Raimondo,*
  603 U.S. 369 (2024) .............................................................37

*Lucacela v. Reno,*
  161 F.3d 1055 (7th Cir. 1998) ..............................................46

*M.M.V. v. Garland,*
  1 F.4th 1100 (D.C. Cir. 2021) ......................................................23, 25

*Make the Rd. New York v. Noem,*
  No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025) .................42

*Make the Road New York v. Noem,*
  805 F. Supp. 3d 139 (D.D.C. 2025) ..............................................41, 42

*Marqus v. Barr,*
  968 F.3d 583 (6th Cir. 2020) ...............................................................44

*Mathews v. Eldridge,*
  424 U.S. 319 (1976) ...............................................................................16

*Matter of E-R-M- & L-R-M,*
  25 I. & N. Dec. 520 (BIA 2011) ...........................................................28

*Mendoza-Linares v. Garland,*
  51 F.4th 1146 (9th Cir. 2022) .............................................................21

*Nken v. Holder,*
  556 U.S. 418 (2009) ...............................................................................46

*Overstreet v. Lexington-Fayette Urb. Cnty. Gov't,*
  305 F.3d 566 (6th Cir. 2002) ...............................................................19

*Reno v. Am.-Arab Anti-Discrimination Comm.,*
  525 U.S. 471 (1999) ..........................................................................27, 28

*Rodriguez-Tovar v. Lynch,*
  628 F. App'x 393 (6th Cir. 2015) ........................................................44

*Rowe v. Motor Transp. Ass'n,*
  552 U.S. 364 (2008) ...............................................................................34

*Sarkisov v. Bondi,*
   138 F.4th 976 (6th Cir. 2025) ............................................... 46

*Shunaula v. Holder,*
   732 F.3d 143 (2d Cir. 2013) ................................................ 23

*Tazu v. Att'y Gen. U.S.,*
   975 F.3d 292 (3d Cir. 2020) ................................................ 29

*United States ex rel. Knauff v. Shaughnessy,*
   338 U.S. 537 (1950) ........................................................... 4

*United States v. Balint,*
   201 F.3d 928 (7th Cir. 2000) ............................................... 32

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ............................................................. 40

## STATUTES

5 U.S.C. §705 ................................................................. 17, 39

8 U.S.C. §1158 ..................................................................... 8

8 U.S.C. §1182(d)(5) ........................................................... 5, 6

8 U.S.C. §1182(d)(5)(A) ............................................. 9, 10, 32, 33

8 U.S.C. §1225(a) ................................................................. 4

8 U.S.C. §1225(b) ................................................................. 5

8 U.S.C. §1225(b)(1) .................................................... 4, 7, 8, 17

8 U.S.C. §1225(b)(l)(B) ...................................................... 8, 47

8 U.S.C. §1225(b)(2) ............................................................ 48

vi

8 U.S.C. §1226(a) ....................................................................35

8 U.S.C. §1229a.............................................................1, 8, 9, 15

8 U.S.C. §1252(b)(9)..........................................................29, 30, 31

8 U.S.C. §1252(e)(2) ..........................................................17, 23, 24

8 U.S.C. §1252(e)(5) ....................................................................26

8 U.S.C. §1252(g) ...........................................................26, 27, 29

8 U.S.C. §1252(a)(2)(A).....................................................3, 17, 20, 21

28 U.S.C. §1292(a)(1)......................................................................3

## **<u>RULES</u>**

Federal Rule of Appellate Procedure 34(a)(2) .........................................vii

Federal Rules of Appellate Procedure 32(a)(5) .........................................50

## **<u>REGULATIONS</u>**

8 C.F.R. §1.1(q) (1998) ....................................................................5

8 C.F.R. §1.2.............................................................................18, 37

8 C.F.R. §208.30(f) ........................................................................8

8 C.F.R. §212.5(e)(2)(i) ....................................................................38

8 C.F.R. §1003.42...........................................................................14

8 C.F.R. §1003.42(f) .......................................................................9

8 C.F.R. §1208.16(c)(2) ...................................................................44

## <u>Other Authorities</u>

*Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312, 10,312-13 (Mar. 6, 1997)..............................................5, 37

*Eligibiligy of Arriving Aliens in Removal Proceedings to Apply for Adjustment of Status and Jurisdiction to Adjudicate Applications for Adjustment of Status*, 71 Fed. Reg. 27 (May 12, 2006) .........................6

*Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8,139 (Jan. 24, 2025). .................................................7, 11

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Pursuant to Federal Rule of Appellate Procedure 34(a)(2) and 6th Cir. R. 34(a), Respondents-Appellants submit that oral argument will assist the Court in resolving this appeal. This appeal addresses the interpretation of the Government's expedited removal authority under 8 U.S.C. §1225(b)(1), and the district court's jurisdiction to consider the Government's application and implementation of that removal authority—recurring issues in courts nationwide. Oral argument will aid the Court in evaluating the parties' arguments on these questions and facilitate the Court's resolution of them.

## INTRODUCTION

Congress created expedited removal in 1996 to provide an invaluable enforcement tool to remove certain inadmissible aliens quickly without the more cumbersome procedures under Immigration and Nationality Act (INA) §240, 8 U.S.C. §1229a. Congress provided that arriving aliens, and unadmitted aliens not continuously present in the country for two years prior to their determination of inadmissibility, could be subject to expedited removal. Less than a year later, the Clinton Administration promulgated regulations implementing expedited removal. As part of that effort, it defined the term "arriving alien" specifically to include aliens like Petitioners who have been paroled into the United States at ports of entry—including after that parole has expired, as Petitioners' parole had when they were detained. *See* 8 C.F.R. §§1.2 and 235.3.

The application of expedited removal to paroled arriving aliens is consistent with decades of case law and duly-enacted statutes. Petitioners do not dispute that under bedrock principles of immigration law, an alien paroled at a port of entry is legally considered to be at the border "and ha[s] gained no foothold" in the United States, *Kaplan v. Tod*,

1

267 U.S. 228, 230 (1925). Congress undoubtedly had this in mind when it enacted expedited removal for aliens "arriving in" the United States. Congress also is presumed to have been aware of established precedent prior to the enactment of expedited removal holding that a paroled "arriving alien" was not deemed to have made an "entry," and was therefore subject to the former "exclusion" proceedings with less procedural protections.

Yet the district court below issued a preliminary injunction barring application of expedited removal to Petitioners. The district court did so despite multiple statutory bars to its jurisdiction over Petitioners' claims challenging the application of expedited removal to them, and clear statutory authority in the INA and its implementing regulations that authorize the expedited removal of paroled arriving aliens like Petitioners.

Further, the district court entered its order despite the fact that Petitioners also failed to establish irreparable harm. They are indisputably removable from the United States and had a sufficient opportunity to present their claims of persecution and torture before both a Department of Homeland Security (DHS) asylum officer and an

Immigration Judge (IJ). Finally, the other equitable factors also tip in the Government's favor. Accordingly, this Court should reverse.

## STATEMENT OF JURISDICTION

The district court lacked jurisdiction pursuant to 8 U.S.C. §§1252(a)(2)(A), (b)(9), (g), and (e) to hear Petitioners' challenge to expedited removal. On December 7, 2025, the district court issued a preliminary injunction and granted in part the Petition for Writ of Habeas Corpus. District Court November 7, 2025 Order ("Order"), RE 26, PageID #24-25. This Court has appellate jurisdiction under 28 U.S.C. §§1292(a)(1) and 2253(a). Appellants timely appealed by filing a notice of appeal on January 6, 2026. Notice of Appeal, RE 30, PageID #432.

## STATEMENT OF THE ISSUES

1. Whether 8 U.S.C. §§1252(a)(2)(A), (b)(9), (g), and (e) preclude the district court from reviewing Petitioners' claim that they are not subject to expedited removal because they were paroled into the United States at ports of entry.

2. Whether the INA and DHS regulations authorize DHS to apply expedited removal under 8 U.S.C. §1225(b)(1) to aliens paroled at ports of entry.

3. Whether the district court erred in granting a preliminary injunction where the likelihood of success and balance of harms weigh heavily in the Respondents' favor.

## STATEMENT OF THE CASE

## I. Statutory Framework

### A. Expedited Removal is a Critical Enforcement Tool to Remove Certain Aliens While Providing Aliens with a Robust Process to Assert a Persecution or Torture Claim.

The Executive Branch has broad constitutional and statutory power over the administration and enforcement of the nation's immigration laws. *See, e.g., United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). In 1996, Congress created expedited removal in the INA, a streamlined procedure for the removal of certain inadmissible aliens who lack valid documentation or who present fraudulent documents. 8 U.S.C. §1225(b)(1); *see also id.* §1182(a)(6)(C), (7). Congress also defined a new category of aliens, known as "applicants for admission." *See* 8 U.S.C. §1225(a) (describing "[a]n alien present in the United States who has not been admitted or who arrives in the United States").

4

Expedited removal is a process specific to certain applicants for admission. *See* 8 U.S.C. §1225(b) (describing "inspection of applicants for admission"). Within that broader category, two groups of aliens are subject to expedited removal under §1225(b)(1). The first group of aliens subject to expedited removal encompasses aliens "arriving in" the United States and who are subject to the relevant grounds of inadmissibility, *id.* §1225(b)(1)(A)(i). The statute does not define "arriving in."

In 1997, the Attorney General promulgated regulations implementing expedited removal, including a regulation defining "arriving alien" under the §1225(b)(1)(A)(i)'s "arriving in" authority. *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312, 10,312-13 (Mar. 6, 1997). That definition included "an alien who seeks admission to or transit through the United States, as provided in 8 CFR part 235, at a port-of-entry." 8 C.F.R. §1.1(q) (1998) (currently at 8 C.F.R. §§1.2, 1001.1(q)). As relevant here, that regulation also provided that "[a]n arriving alien *remains such even if paroled* pursuant to section 212(d)(5) of the Act [8 U.S.C. §1182(d)(5)]." *Id.* (emphasis added). During the notice-and-comment process, at least one

commentator objected to including parolees in the category of arriving aliens. 62 Fed. Reg. at 10,313. The Department considered the objection and declined to adopt the commentator's suggestion explaining that "there is solid statutory basis" to include parolees within the arriving alien definition. *Id.* (explaining that "[t]he inclusion of paroled aliens was based on the statutory language in section 212(d)(5) of the Act [8 U.S.C. §1182(d)(5)]"). The rule went into effect on April 1, 1997. 62 Fed. Reg. at 10,312.

Although the regulation has been revised since its adoption, the amendments only confirm the term "arriving alien" includes aliens paroled at ports of entry. In 2006, the regulatory definitions were amended to specifically provide, as they do now, that an arriving alien includes aliens who are paroled "even after any such parole is terminated or revoked." 8 C.F.R. §§1.2, 1001.1(q); *see* 71 Fed. Reg. 27,585, 27,591 (May 12, 2006).

The regulatory provisions at 8 C.F.R. §§1.2 and 235.3 work in tandem to implement DHS's "arriving in" authority to apply expedited removal to aliens paroled at ports of entry. Section 235.3(b)(1) delineates the "classes of aliens" subject to expedited removal, including "arriving

6

aliens, *as defined in 8 CFR 1.2*." 8 C.F.R. §235.3(b)(1)(i) (emphasis added).  Together, these provisions effectuate the Government's policy, as first established in 1997, to apply expedited removal to aliens paroled at ports of entry under 8 U.S.C. §1225(b)(1)(A)(i).

The second group of aliens subject to expedited removal includes aliens designated by the Secretary within certain statutory limits.  *See* 8 U.S.C. §1225(b)(1)(A)(iii) ("Designation Provision").  The statute limits designation as follows:  "An alien ... who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility."  8 U.S.C. §1225(b)(1)(A)(iii)(II).

The most recent designation occurred on January 24, 2025. *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8,139 (Jan. 24, 2025).  The designation enabled DHS to apply expedited removal to inadmissible aliens "who have not been admitted or paroled into the United States and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the

7

United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility." As discussed, *supra*, Respondents do not rely on this Designation Provision in defending DHS's application of expedited removal to Petitioners but instead rely on DHS's "arriving in" authority as implemented by the regulations.

***Credible Fear Proceedings***. If an alien who is subject to expedited removal "indicates either an intention to apply for asylum … or a fear of persecution," 8 U.S.C. §1225(b)(l)(B), the inspecting officer must "refer the alien for" an interview by an asylum officer, 8 U.S.C. §1225(b)(l)(A)(ii). The asylum officer will then assess whether the alien has a "credible fear of persecution," meaning "that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under [8 U.S.C. §1158]." 8 U.S.C. §1225(b)(1)(B)(v). If the officer determines that the alien has a credible fear, the officer refers the alien to removal proceedings under 8 U.S.C. §1229a. 8 U.S.C. §1225(b)(1)(B)(ii), 8 C.F.R. §208.30(f).

If the asylum officer determines the alien lacks a credible fear, the alien may seek de novo review before an IJ. 8 U.S.C. §1225(b)(1)(B)(iii)(I), (III); *see DHS v. Thuraissigiam*, 591 U.S. 103, 110 (2020). If the IJ concludes that the alien has a credible fear, the alien is placed into removal proceedings under §1229a. 8 C.F.R. §1208.30(g)(2)(iv)(B). If, on the other hand, the IJ finds that the alien lacks a credible fear, the alien is "removed from the United States without further hearing or review." 8 U.S.C. §1225(b)(1)(B)(iii)(I), 8 C.F.R. §1208.30(g)(2)(iv)(A). The INA precludes further review by the agency or any court of the credible fear determination. 8 U.S.C. §§1225(b)(1)(B)(iii), 1252(a)(2)(A)(iii), 1252(e)(2); 8 C.F.R. §1003.42(f), which the Supreme Court found constitutional in *Thuraissigiam*, 591 U.S. at 140-41.

***Detention***. Aliens who demonstrate a credible fear "shall be detained for further consideration of the application for asylum." 8 U.S.C. §1225(b)(1)(B)(ii); *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("Read most naturally, §§1225(b)(1) and (b)(2) … mandate detention of applicants for admission until certain proceedings have concluded."). The only exception to §1225(b)(1)'s detention mandate is found in 8

9

U.S.C. §1182(d)(5)(A), which allows DHS to parole aliens into the United States on a case-by-case basis for "urgent humanitarian reasons or significant public benefit." *See Jennings*, 583 U.S. at 300 (holding that the existence of §1182(d)(5)(A)'s "express exception to detention implies that there are no other circumstances under which aliens detained under §1225(b) may be released"). The statute does not impose "any limit on the length of detention" pending a decision on the asylum application, and does not authorize bond hearings or release under 8 U.S.C. §1226(a). *Id.* at 297.

**B. The Secretary has Broad Discretion to Grant and Terminate Parole Which is Not an Admission.**

As amended in 1996, the parole statute provides that the Secretary of Homeland Security "may, … in his discretion parole" an "alien applying for admission," and specifies that such a parole may be granted "temporarily under such conditions as he may prescribe [and] only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. §1182(d)(5)(A). The statute further states that parole may be terminated "when the purposes of such parole shall, in the opinion of the [DHS] Secretary …, have been served." *Id.*

During the Biden Administration, DHS established several parole programs, including parole programs for individuals from Cuba, Haiti, Nicaragua, and Venezuela ("CHNV" programs), in which nationals of those countries who met certain requirements could be allowed to travel to certain U.S. ports of entry to request discretionary consideration for parole for up to a two-year term. *Doe v. Noem*, 152 F.4th 272, 278 (1st Cir. 2025). Petitioners were paroled under the Haitian parole program. Order, RE 26, PageID #405 n.2. DHS ended these parole programs in March 2025. *Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13,611 (Mar. 25, 2025) ("CHNV Termination Notice").

## II. Factual Background and Procedural History

### A. Petitioners' Parole Expires and DHS Issues Orders of Expedited Removal.

Petitioners are citizens of Haiti. Habeas Corpus Petition ("Pet."), RE 1, PageID #2, ¶2. On July 16, 2024, Petitioner E.V. was paroled into the United States as a beneficiary of the CHNV parole program. Order, RE 26, PageID #405. Petitioner M.F.E. was paroled into the United States on May 12, 2024, also pursuant to the CHNV program. *Id.*, PageID #406. Petitioners were authorized to remain in the United States

until June 12, 2025.  *Id.*, PageID #405-06.  On June 13, 2025, Petitioners'

grants of parole were terminated after the CHNV program ended.  Notice

of Termination of Parole, RE 12-1, 12-8, PageID #231, 288 (Ex. A and H).

Nevertheless, Petitioners remained in the United States without

authorization.  Pet., RE 1, PageID #2, ¶3 (noting that Petitioners' parole

"had lapsed in the month before their detention").

On July 29, 2025, Petitioners were encountered and detained by

U.S. Immigrations and Customs Enforcement (ICE).  Order, RE 26,

PageID #406.  They were processed for expedited removal as arriving

aliens and issued expedited removal orders.  *See* Expedited Removal

Order for E.V., RE 12-2 (Ex. B), PageID #232; ER Order for M.F.E., 12-9

(Ex. I), PageID #289.  Both E.V. and M.F.E claimed a fear of returning to

Haiti.  Order, RE 26, PageID #406-07.  On September 5, 2025, an asylum

officer from the U.S. Citizenship and Immigration Services ("USCIS"), a

component of DHS, conducted a credible fear interview with M.F.E.

Record of Determination/Credible Fear Worksheet, RE 2-6 (Ex. F.),

PageID #88-99.  On September 9, 2025, the asylum officer made a

negative credible fear finding concluding M.E.F. did not establish a

credible fear of persecution because she did not show that she had been

persecuted or would be persecuted on account of a qualifying statutory ground. *Id.*, PageID #100-01. The asylum officer reasoned that M.F.E feared being harmed by criminal bandits who sought to rob people of money which was not a basis for asylum. *Id.* The asylum officer further concluded M.F.E. did not establish a credible fear of torture because she did not show that the Haitian Government would consent or acquiesce to the bandits harming her. *Id.*, PageID #101. On October 2, 2025, the IJ affirmed the officer's negative credible fear finding. IJ Order, RE 12-12 (Ex. L), PageID #296-97.

On August 18, 2025, an asylum officer conducted a credible fear interview with E.V. Pet., RE 1, PageID #7, ¶26. On August 29, 2025, the asylum officer made a negative credible fear finding. The officer concluded that E.V. did not show a "significant possibility that she could establish in a full hearing" that her alleged harm is "on account" of a qualifying ground. Record of Negative Credible Fear Finding, RE 12-4 (Ex. C), PageID #234. The asylum office further concluded E.V. did not establish a credible fear of torture because she failed to show a "significant possibility" that the alleged harm "would be inflicted by or at the instigation of, or with the consent or acquiescence of, a public official

or other person acting in an official capacity." *Id.* On September 11, 2025, the IJ affirmed the officer's negative credible fear finding. IJ Order, RE 12-5 (Ex. E), PageID #239-40. E.V.'s counsel then filed a motion to reopen with the IJ, who denied the motion on September 23, 2025, on the ground that 8 C.F.R. §1003.42 does not allow for reopening or reconsideration of the negative credible fear determination. IJ Order, RE 2-7 (Ex. G), PageID #286-87.

**B.** **The District Court Granted Injunctive Relief and Ordered Respondents to Place Petitioners in Removal Proceedings and Provide Bond Hearings.**

Following the conclusion of the credible fear process, Petitioners filed a Motion for a Temporary Restraining Order in the U.S. District Court for the Northern District of Ohio, arguing, *inter alia*, that DHS could not apply expedited removal to them as aliens who had been paroled into the country, that such application violated a stay order issued by the District Court for the District of Columbia in *Coalition for Humane Immigrant Rights (CHIR) v. Noem*, 805 F. Supp. 3d 48 (D.D.C. 2025), and that their continued detention pursuant to the expedited removal statute violated their Fifth Amendment right to due process. TRO Motion, RE 8, PageID #180-184. The district court granted that

14

motion, concluding that: (1) aliens paroled at ports of entry are not subject to expedited removal, and (2) as paroled aliens, Petitioners had an ongoing liberty interest that was not sufficiently safeguarded by the procedures under the expedited removal statute. TRO Order, RE 15, PageID #331-34. As relevant here, the court ordered the Government to process Petitioners for removal proceedings under 8 U.S.C. §1229a, rather than expedited removal proceedings. *Id.*, PageID #337. ICE complied with the court's order by issuing Notices to Appear ("NTA") commencing §1229a removal proceedings for both Petitioners.[1] Order, RE 26, PageID #409.

Subsequently, following further briefing, the district court considered Petitioners' motion for a preliminary injunction and petition for habeas corpus, granting the motion in full and the petition in part on November 7, 2025. *Id.*, PageID #427-28. First, the court rejected the Government's threshold jurisdictional arguments. Most relevant to this case, the court rejected the Government's reliance on 8 U.S.C. §1252(a)(2)(A), reasoning that federal courts retain jurisdiction to

---

[1] According to the Executive Office for Immigration Review (EOIR), Petitioners' proceedings remain pending before an Immigration Judge.

determine whether any particular exercise of discretion violates the law or Constitution. *Id.*, PageID #413-15.

Second, regarding the likelihood of success on the merits, the district court relied heavily on *CHIR* to conclude that Petitioners were outside the class of aliens who could be subject to expedited removal. *Id.*, PageID #416 ("[T]he Court concurs with the statutory analysis in [*CHIR*]"). The court also reasoned that *CHIR*'s "nationwide stay" order is still in effect. *Id.* As to the other preliminary injunction factors, the court determined that Petitioners had established irreparable harm and that the balance of equities weighs in their favor. *Id.*, PageID #417-18.

Finally, regarding Petitioners' detention pending §1229a removal proceedings, the Court concluded that: (1) Petitioners developed a liberty interest given their parole into the United States sufficient to invoke the Fifth Amendment's Due Process Clause; and (2) under the *Mathews* balancing test,[2] they were entitled to an individualized bond hearing at which the Government would bear the burden of establishing the need for continued detention. *Id.*, PageID #418-26. Petitioners were given

---

[2] *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

bond hearings and released from custody on November 14, 2025.  Notice of Release, RE 27, PageID #429.

## SUMMARY OF ARGUMENT

The district court's November 7, 2025 order granting a preliminary injunction and ordering DHS to provide Petitioners with bond hearings should be reversed for two reasons.  *First*, the court lacked jurisdiction pursuant to 8 U.S.C. §§1252(a)(2)(A), (b)(9), and (g) to review Petitioners' challenge to DHS's application of expedited removal.  Petitioners' challenge also does not fall within the narrow habeas review Congress preserved for matters relating to expedited removal, 8 U.S.C. §1252(e)(2) & (3).

*Second*, on the merits, the district court erred in concluding that Petitioners were likely to succeed on their claim that they are not subject to expedited removal because they were paroled into the United States at ports of entry.  DHS may apply expedited removal under 8 U.S.C. §1225(b)(1)(A)(i) to an alien "arriving in the United States," which includes parolees.  The court below relied heavily on the *CHIR* decision issued by a D.C. District Court.  *See* 805 F. Supp. 3d 48.  That decision stayed under 5 U.S.C. §705 certain DHS documents applying expedited

17

removal to paroled aliens. But the D.C. district court committed numerous errors in reaching the wrong result, and the district court below applied the very same erroneous reasoning. In particular, the *CHIR* court erred in construing the term "arriving" by failing to consider the unique statutory and historical context of parole in which Congress legislated. As then-Attorney General Reno recognized almost 29 years ago—and which was never disputed until recently—aliens who are paroled at ports of entry fall within the category of "arriving aliens." *See* 8 C.F.R. §1.2.

To the extent the district court's likelihood-of-success finding is based on a conclusion that it was bound by *CHIR*'s stay order, that conclusion is wrong. As explained, *infra*, DHS continues to lawfully apply expedited removal to paroled arriving aliens under its *regulatory authority* at 8 C.F.R. §§1.2 and 235.3, which was not enjoined in the *CHIR* stay order. Indeed, the *CHIR* Plaintiffs have not claimed that such application is a violation of the *CHIR* court's order; nor has the D.C. District Court found it to be so.

Finally, if the Court reverses the district court on the merits of expedited removal, it should vacate the district court's decision and remand for proceedings consistent with the Court opinion.

## STANDARD OF REVIEW

Injunctive relief is an "extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "In determining whether to issue a preliminary injunction, the Court must examine four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." *Id.* The most important factor in the four-factor test used to determine whether a court should issue a preliminary injunction is whether the petitioners can show a likelihood of success on the merits. *Higuchi Int'l. Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 404 (6th Cir. 2024).

## ARGUMENT

**I.    The Government Is Likely to Succeed on the Merits.**

**A.    Multiple Jurisdictional Bars Prohibit District-Court Review of Petitioners' Challenge to Expedited Removal.**

Petitioners raise only one challenge to their expedited removal order—that because they were paroled at ports of entry, they are ineligible for expedited removal.  The district court, however, lacked subject-matter jurisdiction over that claim at least three times over.

### 1. 8 U.S.C. §§1252(a)(2)(A) and (e)

Congress has carefully crafted a detailed review scheme providing for "limited habeas review of expedited removal orders."  *Hamama v. Adducci*, 912 F.3d 869, 874 n.6 (6th Cir. 2018) (citation omitted); *accord Thuraissigiam*, 591 U.S. at 111.  That narrow review does not encompass Plaintiffs' claims.

a.  Specifically, 8 U.S.C. §1252(a)(2)(A), entitled "Review relating to section 1225(b)(1))," provides that "*[n]otwithstanding any other provision of law* (statutory or nonstatutory), including *section 2241 of Title 28*, or any other habeas corpus provision, and sections 1361 and 1651 of such title, *no court shall have jurisdiction to review*" specified agency actions

20

related to expedited removal. 8 U.S.C. §§1252(a)(2)(A)(i-iv). The provision then goes on to specify four particular categories that cover every aspect of the expedited removal process." *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1154 (9th Cir. 2022). "Congress could scarcely have been more comprehensive in its articulation of the general prohibition on judicial review of expedited removal orders." *Id.* at 1155. While Petitioners' claims need to meet only one provision for the district court to lack jurisdiction, here Petitioners' claims are barred by each and every one of §1252(a)(2)(A)'s jurisdictional bars.

*First*, 8 U.S.C. §1252(a)(2)(A)(i) bars district-court jurisdiction. Petitioners' claims indisputably "aris[e] from or relat[e] to the implementation or operation of an order of removal pursuant to section 1225(b)(1)." 8 U.S.C. §1252(a)(2)(A)(i). Petitioners seek review of the "application" of the expedited removal statute to them claiming it is inapplicable based on their grants of parole at ports of entry. Petition, RE 1, PageID #15-16, ¶54.

*Second*, 8 U.S.C. §1252(a)(2)(A)(ii) applies because DHS made a decision "to invoke" expedited removal to paroled arriving aliens like

Petitioners through the 1997 regulations, now codified at 8 C.F.R. §§1.2 and 235.3(b)(1).

*Third*, 8 U.S.C. §1252(a)(2)(A)(iii) also bars district-court jurisdiction over Petitioners' claims. That provision bars district-court jurisdiction over the "application" of expedited removal to "individual alien." 8 U.S.C. §1252(a)(2)(A)(iii). Again, Petitioners are challenging the "application" of the expedited removal statute to them, so their claims are barred. *See* Petition, RE 1, PageID #15-16, ¶54.

*Fourth*, 8 U.S.C. §1252(a)(2)(A)(iv) bars district-court jurisdiction here. That provision precludes jurisdiction for courts to review "procedures and policies adopted by the Attorney General [and now DHS Secretary] to implement the provisions of section 1225(b)(1) of this title," the expedited-removal statute. Petitioners challenge DHS's "procedures" to implement the provisions of the expedited-removal statute to paroled arriving aliens; specifically, they challenge the validity of regulations, 8 C.F.R. §§1.2 and 235.3(b)(1), that were promulgated in 1997 and apply expedited removal to paroled aliens like themselves. *See* Pet., RE 1, PageID #15, ¶53; *see also M.M.V. v. Garland*, 1 F.4th 1100, 1106 (D.C. Cir. 2021) (applying the "procedures and policies adopted" bar).

22

Petitioners' claims are thus subject to every one of 8 U.S.C. §1252(a)(2)(A)'s jurisdictional bars. The district court therefore lacked jurisdiction to adjudicate Plaintiffs' claims.

b. Congress did authorize habeas review over certain specific challenges to expedited removal, but Petitioners' claims do not fall within any of those narrow categories. Three of the four subsections where jurisdiction is barred over challenges to expedited removal provide an exception for claims falling within "subsection (e)." *See* 8 U.S.C. §1252(a)(2)(A)(i)-(ii), (iv). Subsection (e) provides two exceptions to the reviewability bars in section §1252(a)(2)(A), neither of which apply here.

Specifically, 8 U.S.C. §1252(e)(2) provides for judicial review "in habeas corpus proceedings" for expedited removal "determinations," but limits said review to: (1) whether the petitioner is a citizen; (2) whether the petitioner was ordered removed; and (3) whether the petitioner is a lawful permanent resident or refugee. 8 U.S.C. §1252(e)(2); *see also Shunaula v. Holder*, 732 F.3d 143, 145-47 (2d Cir. 2013) (§1252(a)(2)(A) and (e) bar judicial review of expedited removal order). Yet Petitioners' claims here present none of those permissible challenges. Instead, they assert that "placement … in expedited removal proceedings violates the

plain language of the expedited removal statute, contravenes a binding nationwide stay order," and "deprives [them] of due process." TRO Motion, RE 8, PageID #180. Because their claims do not meet the limited habeas review available in §1252(e)(2), Petitioners' claims are barred by 8 U.S.C. §1252(a)(2)(A) for the reasons discussed *supra.*

c. Subsection (e) does provide one other exception (but inapplicable) here. 8 U.S.C. §1252(a)(2)(A)(iv) includes an exception ("except as provided in subsection (e)") for "Challenges on Validity of the System," including whether the statute or "regulation[s] issued to implement such section … [are] constitutional" or such regulations are "not consistent with applicable provisions of this subchapter or is otherwise in violation of law." 8 U.S.C. §§1252(a)(2)(A)(iv), (e)(3)(A). But such a challenge may be raised only through "an action instituted in the United States District Court for the District of Columbia" filed "no later than 60 days" after the rule or agency action "is *first implemented.*" *Id.*, §1252(e)(3)(A) & (B) (emphasis added). The Northern District of Ohio—where Petitioners brought this case—is obviously not the District Court for the District of Columbia, and in any event their challenge to the 1997 regulations is *decades* late. *See M.M.V.,* 1 F.4th at 1109 (§1252(e)(3)(B)'s

60-day time bar "speaks in jurisdictional terms" and is therefore not subject to equitable tolling). Petitioners' claims thus are subject to 8 U.S.C. §1252(a)(2)(A)(iv)'s jurisdictional bar.

*　　*　　*

The District Court's jurisdictional analysis to the contrary is plainly incorrect. *See* Order, RE 26, PageID #411-16. It found §1252(a)(2)(A) inapplicable on the rationale that "[f]ederal courts are not precluded from reviewing 'how' [defendants] exercise their discretion and determining whether such exercise is violative of the Constitution or federal law." *Id.*, PageID #414; *see also id.*, PageID #414-15 ("Petitioners' challenges present legal questions that do not concern DHS's discretionary decision-making"). But that terse conclusion fails to engage with Congress's provision for only very limited habeas review over expedited removal. Nothing in §1252(a)(2)(A) or §1252(e) supports the district court's apparent suggestion that courts have open-ended jurisdiction to address any and all "legal questions."

In fact, Congress made that abundantly clear when it specifically stated that its exception at §1252(e)(2)(B)—allowing courts to review

25

"whether the petitioner was ordered removed"—does not allow the alien to challenge the *merits* of the expedited removal order:

> In determining whether an alien has been ordered removed under [8 U.S.C. §1225(b)(1)], the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.

8 U.S.C. §1252(e)(5); *see Khan v. Holder*, 608 F.3d 325, 330 (7th Cir. 2010); *Brumme v. INS*, 275 F.3d 443, 447 (5th Cir. 2001). In other words, notwithstanding that Petitioners raise a legal challenge to the application and implementation of expedited removal, that challenge is unreviewable under Congress's review scheme.

Thus, the district erred in concluding it retained jurisdiction as none of the enumerated exceptions to §1252(a)(2)(A)'s bar apply.

### 2. 8 U.S.C. §1252(g)

Even if 8 U.S.C. §1252(a)(2)(A) and (e) did not bar district-court jurisdiction over Petitioners' claims, §1252(g) would independently bar jurisdiction. In their habeas petition, Petitioners requested the district court "order that Petitioners be placed in regular removal proceedings under 8 U.S.C. §1229a." Pet., RE 1, PageID #16. That request falls directly within 8 U.S.C. §1252(g)'s preclusion of review for actions

seeking to challenge DHS's initiation of removal proceedings, which includes DHS's discretionary decision to initiate the removal procedure it deems most appropriate in a particular case.

Section 1252(g) provides in relevant part that "notwithstanding any other provision of law (statutory or nonstatutory) ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary] to *commence proceedings* ....," except through a petition for review from a final order of removal filed in a court of appeals. (Emphasis added).

The Supreme Court has explained that 8 U.S.C. §1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 & n.9 (1999) ("*AADC*"). Here, Petitioners effectively requested that the district court "impose judicial constraints" on DHS's "prosecutorial" decision to "commence" expedited removal proceedings. But that is one of the actions that §1252(g) bars. In *AADC*, the Court held that §1252(g) precluded the district court's review of the aliens' selective prosecution claims which sought to enjoin the Government from commencing removal proceedings. *Id.* at 487 ("the

language seems to have been crafted with such a challenge precisely in mind"); *see also Matter of E-R-M- & L-R-M*, 25 I. & N. Dec. 520, 521–24 (BIA 2011) (DHS has discretion whether to process an inadmissible alien for expedited removal or to place the alien in 1229a proceedings).

The district court also erred in concluding §1252(g) did not apply. The court reasoned that "Petitioners are not challenging … the [DHS] Secretary's discretionary authority to commence or adjudicate removal proceedings." Order, RE 26, PageID #413. But as discussed above, Petitioners were challenging precisely that authority. *See* Pet., RE 1, PageID #16. The district court also erred by reasoning that §1252(g) does not preclude review over legal claims. Order, RE 26, PageId # 412. The district court cannot bypass section 1252(g) simply because Petitioners raise a statutory interpretation question as to DHS's authority to apply expedited removal to paroled aliens, just as the Plaintiffs in *AADC* could not bypass §1252(g) by alleging selective enforcement constitutional claims. *Id.*; *accord Elgharib v. Napolitano*, 600 F.3d 597, 606 (6th Cir. 2010) ("§1252(g) deprive[s] the district court of subject-matter jurisdiction over Elgharib's constitutional challenge to her final order of removal"). Indeed, such an outcome "would gut §1252(g)" because

"[f]uture petitioners could restyle any challenge to the [covered] actions ... as a challenge to the Executive's general lack of authority to violate due process, equal protection, the Administrative Procedure Act, or some other federal law." *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298 (3d Cir. 2020).

Thus, the district court lacked jurisdiction because 8 U.S.C. §1252(g) precluded review of Plaintiffs' claims.

### 3. 8 U.S.C. §1252(b)(9)

The jurisdictional bar at 8 U.S.C. §1252(b)(9) also applies to preclude the district court's review of the statutory interpretation question. That provision states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter [including §1225(b)(1)] shall be available only in judicial review of a final order under this section." Notably, the statute further provides that, apart from a petition for review filed directly with the courts of appeals, "*no court* shall have jurisdiction, *by habeas corpus under section 2241* of Title 28 or any other habeas corpus provision, ... to review such an order

29

*or such questions of law or fact.*") (emphasis added); *see also J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("*any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed only through the PFR process") (emphasis in original).

Yet the district court concluded that 8 U.S.C. §1252(b)(9) did not apply to preclude Petitioners' challenge to their detention. Order, RE 26, PageID #415. In doing so, the court failed to even consider their challenge to the application of expedited removal to them and paroled arriving aliens more generally—the entire basis for their detention. *See id.* Section 1252(b)(9) plainly applies to preclude review because Petitioners' challenge "aris[es]" from DHS's "action" "to remove" Petitioners from the United States. *See* Pet., RE 1, PageId #17; TRO Motion, RE 8, PageID #166 (asking the district court for a "stay of removal … prohibiting Respondents from removing [them]" pursuant to their expedited removal orders). And Petitioners' detention claim is inextricably intertwined with their challenge to DHS's application of expedited removal to them, a challenge that section 1252(b)(9) clearly bars.

The district court therefore also lacked jurisdiction over Petitioners' claims pursuant to 8 U.S.C. §1252(b)(9)'s jurisdictional bar.

**B.     Even Assuming the District Court had Jurisdiction, Petitioners are Properly Subject to Expedited Removal as Arriving Aliens Paroled at Ports of Entry.**

The district court below relied heavily on the *CHIR* case and failed to independently consider the statutory issue of whether DHS can apply expedited removal to parolees. Order, RE 26, PageID #416-17. The INA provides that an alien "arriving in the United States" who is inadmissible under one of the qualifying grounds is subject to expedited removal. 8 U.S.C. §1225(b)(1)(A)(i). Text, statutory context, and history demonstrate that the "arriving in" provision applies to paroled arriving aliens. In concluding otherwise and relying on *CHIR*, the district court made several errors.

1. The D.C. District Court in *CHIR* first erred by isolating the word "arriving" and insisting it cannot be applied to paroled aliens because they have already "reached" the United States and been paroled. *See* 805 F. Supp. 3d at 90. But that reading ignores the immigration and statutory context of the term "arriving"—context that strongly indicates that Congress was referring to a *status* and not just a historical event

31

(the alien's physical arrival). The use of the present-progressive tense, "arriving," signals a status that continues to be true; an alien "arriving in" the United States without valid documentation has not been admitted and continues to not be admitted. *See United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000) ("[T]he present progressive tense … generally indicates continuing action[.]"). For paroled arriving aliens, like Petitioners, the parole statute makes clear that parole "shall not be regarded as an admission" and "when the purposes of such parole … have been served" the alien "shall forthwith" be returned to custody and "shall continue to be dealt with in the same manner as that of any other applicant for admission." 8 U.S.C. §1182(d)(5)(A).

Thus, an alien granted parole at a port of entry remains unadmitted and hence, in the *status* of an alien "arriving in" the United States. *See Duarte v. Mayorkas*, 27 F.4th 1044, 1058 (5th Cir. 2022) ("[A]lthough a paroled alien is physically allowed to enter the country, the legal status of the alien is the same as if he or she were still being held at the border waiting for his or her application for admission to be granted or denied."). Congress surely meant to include such aliens under §1225(b)(1)(A)(i).

2. The *CHIR* District Court also failed to grasp the importance of the parole statute to the analysis of the term "arriving in." *See* 805 F. Supp. 3d at 85-86. That statute makes clear that parole "shall not be regarded as an admission" and that once parole ends "the alien shall forthwith return ... to the custody from which he was paroled." 8 U.S.C. §1182(d)(5)(A). The statute's language that parole is not an admission reflects a foundational "legal fiction" in immigration law that aliens paroled into the United States are legally in the same position as aliens standing at the border, regardless of the duration of that parole. *Leng May Ma v. Barber*, 357 U.S. 185, 188-89 (1958). The Supreme Court has repeatedly affirmed that legal fiction in an unbroken line of decisions spanning nearly a century. *See Thuraissigiam*, 591 U.S. at 139; *Leng May Ma*, 357 U.S. at 188-91; *Kaplan v. Tod*, 267 U.S. 228, 230 (1925) (terminated parole had lasted more than 8 years). "The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status, and to hold that petitioner's parole placed her legally within the United States is inconsistent with the congressional mandate, the administrative concept

of parole, and the decisions of this Court." *Leng May Ma*, 357 U.S. at 190 (cleaned up).

This background principle clearly informs the interpretation of "arriving in" for parolees and distinguishes them from other applicants for admission who are not "arriving in" the United States. *See, e.g.*, *Branch v. Smith*, 538 U.S. 254, 281 (2003) (plurality opinion ("And it is, of course, the most rudimentary rule of statutory construction ... that courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part."); *Rowe v. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008) ("We have said that 'when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well.'") (citation omitted)).

3. The statutory history and case law demonstrate Congress's awareness of the term "arriving" as used in the analogous context of "exclusion" proceedings. Prior to the enactment of expedited removal in IIRIRA, aliens arriving at a port of entry who were ineligible to enter the country were placed in exclusion proceedings as "excludable," while those

who entered the country and were "deportable," were placed in "deportation" proceedings. 8 U.S.C. §§1226(a), 1251(a), 1252(b) (1994); *Leng May Ma*, 357 U.S. at 187. In exclusion proceedings an immigration officer had authority to determine whether an "*arriving alien*" detained for further inquiry "shall be allowed to enter or shall be excluded and deported." 8 U.S.C. §1226(a) (1994) (emphasis added). Aliens in exclusion proceedings had significantly fewer "procedural protections and [] substantive rights." *Landon v. Plasencia*, 459 U.S. 21, 25-27 (1982) (detailing differences); *see also Leng May Ma*, 357 U.S. at 187.

Importantly, the Supreme Court held that parole at the border did not entitle an "arriving alien" to be placed in deportation proceedings because such parole does not constitute an "entry." *Leng May Ma*, 357 U.S. at 186-88. This was true even when parole was granted for humanitarian reasons and immigration authorities did not initiate exclusion proceedings until later. *E.g.*, *Barney v. Rogers*, 83 F.3d 318, 320 (9th Cir. 1996) (alien properly placed in exclusion proceedings after parole into United States pursuant to a prior grant of advance parole) (relying on *Leng May Ma*).

Thus, prior to IIRIRA, "[p]aroled aliens were considered arriving aliens" because parole was not considered an entry. *Akhtar v. Gonzales*, 450 F.3d 587, 590 (5th Cir. 2006). In IIRIRA, Congress eliminated exclusion and deportation proceedings and replaced them with "removal proceedings." *See* 8 U.S.C. §1229a. But critically, Congress also created expedited removal for, *inter alia*, aliens "arriving in the United States," like those "arriving aliens" previously placed in exclusion proceedings. 8 U.S.C. §1225(b)(1)(A)(i).

Although the pre-IIRIRA exclusion cases primarily focused on the term "entry" rather than "arriving," they support Defendants' interpretation of "arriving in." Congress is presumed to have legislated with awareness of the prior case law holding that an alien's parole at a port of entry does not exempt the alien from exclusion proceedings. *See Jazz Pharms., Inc. v. Kennedy*, 141 F.4th 254, 263 (D.C. Cir. 2025) ("Where Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it.") (cleaned up). Analogously, under the current scheme, parole of an alien "arriving" at a port of entry should not exempt the alien from expedited removal proceedings. It was against this backdrop that then-Attorney General

36

Reno issued a regulation in 1997 defining "arriving alien" to include paroled arriving aliens.  *See* 62 Fed. Reg. 10,330; *see also* 8 C.F.R. §1.2.

4.  The district court below and the *CHIR* Court also failed to give "due respect" to the agency's interpretation of §1225(b)(1)(A)(i) as set forth in the arriving alien regulation at 8 C.F.R. §1.2.  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024).  "[W]hile courts must exercise independent judgment in determining the meaning of statutory provisions, the contemporary and consistent views of a coordinate branch of government can provide evidence of the law's meaning."  *Bondi v. VanDerStock*, 145 S. Ct. 857, 874 (2025) (quotation marks omitted).

Here, the agency's almost 30-year-old interpretation is not only consistent with the statutory history discussed above but "was issued roughly contemporaneously with enactment of the statute and [has] remained consistent over time."  *Loper Bright*, 603 U.S. at 386.  Thus, it "can inform [a court's] determination of what the law is."  *Id.* (cleaned up).

5.  Finally, the court below was wrong to rely on the D.C. District Court's analysis of a parole regulation, 8 C.F.R. §212.5(e)(2)(i), entitled, "Termination of Parole."  Order, RE 26, PageID #416.  Curiously, the

*CHIR* Court's analysis of this regulation—which was in the context of a tangential point—was the primary focus of the district court's reliance on *CHIR*. *Id.* (citing *CHIR*, 805 F. Supp. 3d at 88). But 8 C.F.R. §212.5(e)(2)(i) actually supports the Government's position because it provides for the continued possibility of expedited removal after the termination of an alien's parole. The regulation states that after parole is terminated, "further inspection or hearing shall be conducted under section *235 [1225]* or 240 [1229a] of the Act") (emphasis added). Thus, an immigration officer retains discretion to initiate a proceeding under INA §"235,"—*i.e.*, expedited removal under 8 U.S.C. §1225(b)(1), once parole is terminated.

In *CHIR*, the district court disagreed reasoning that §1225 also includes §1225(b)(2), and that applicants for admission processed under that provision are placed in §1229a proceedings. *CHIR*, 805 F. Supp. 3d at 88-89. While the *CHIR* Court's description of §1225(b)(2) is correct, its legal conclusion is not. The *only* removal procedure under §1225(b) is the expedited removal procedure at §1225(b)(1); aliens processed under §1225(b)(2) are subject to removal proceedings pursuant to §1229a. Thus, when the regulation states that "further inspection or hearing shall

38

be conducted under §235 or 240 of the Act," the most natural reading is that the alien will either be subject to expedited removal or placed in §240 proceedings; there is no other removal procedure specific to aliens processed under §1225(b)(2). As such, the regulation clearly contemplates expedited removal of paroled arriving aliens.

For all these reasons, a paroled arriving alien is subject to expedited removal under §1225(b)(1)(A)(i).[3]

---

[3] In several places in the district court's order, the court suggests that the government, by placing Petitioners in expedited removal proceedings, violated the 5 U.S.C. §705 stay order issued in *CHIR*. *See, e.g.*, Order, RE 26, PageID # 411 (analyzing whether "Respondents violated … the nationwide stay issued in *Coalition*); *id.*, PageID #417 ("Nothing in the D.C. Circuit's order dictates that *Coalition* is not in effect or does not apply to Petitioners."). It is unclear whether that had any impact on the district court's decision below, given that the court appears to have used *CHIR* primarily for its statutory analysis, with which the court "concur[red]." *Id.*, PageId #416. The *CHIR* court, however, stayed only three DHS documents. 805 F. Supp. 3d at 105. The *CHIR* plaintiffs did not ask that court to enjoin application of the arriving alien regulations at 8 C.F.R. §§1.2 and 235.3(b)(1), as applied to aliens paroled at ports of entry, *id.* at 70 (plaintiffs "have not moved for preliminary relief as to" §1.2). Those regulations independently permit the application of expedited removal to Petitioners here.

In sum, nothing in *CHIR* precluded DHS from applying expedited removal to Petitioners under its arriving alien regulations.[4]

## II. The Remaining Equitable Factors Weigh Strongly in the Government's Favor.

The district court erred in concluding Petitioners had established irreparable harm, and the balance of equities favor the Government.

1. To establish irreparable harm, Petitioners must show they will suffer "actual and imminent" harm rather than harm that is "speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Additionally, a showing of irreparable harm is "indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (requiring movant to show "that irreparable injury is *likely* in the absence of an injunction") (emphasis in original).

---

[4] As noted in the background section, DHS promulgated §§1.2 and 235.3(b)(1)(i) under its "arriving in" authority at 8 U.S.C. §1225(b)(1)(A)(i). Respondents do not rely on the Designation Provision under 8 U.S.C. §1225(b)(1)(A)(iii) in defending DHS's application of expedited removal to Petitioners.

The district court first noted that "Petitioners['] due process claims allege that they were unlawfully subjected to expedited removal proceedings which does not provide sufficient procedural safeguards to prevent mistaken or unjustified deprivation of liberty."  Order, RE 26, PageID # 417 (citing *Make the Road New York v. Noem*, 805 F. Supp. 3d 139 (D.D.C. 2025)).  The court then concluded that "[c]onstitutional violations constitute irreparable harm, no matter their duration."  *Id.*

That analysis is flawed for at least two reasons.  First, Petitioners' mere *allegations* of constitutional violations are insufficient to meet their irreparable harm burden.  "Where a Plaintiff fails to show a likelihood of success on the merits of their claim that their *constitutional rights were violated,* a finding of irreparable harm is not warranted."  *Hartman v. Acton*, 613 F. Supp. 3d 1015, 1025 (S.D. Ohio 2020) (emphasis added) (citing Sixth Circuit cases).  Here, Petitioners' arguments relating to their challenge to expedited removal are based primarily on an *ultra vires* violation, which is what the court below found in its likelihood of success analysis.  Order, RE 26, PageID # 416-17.  The court did not separately

consider a due process claim. *Id.* It was therefore error for it to find irreparable harm based on a mere allegation of a due process violation.[5]

The district court also erred in assuming Plaintiffs "will be persecuted or tortured" if returned to Haiti. *See* Order, RE 26, PageID #418. That is not what the agency found, and the court failed to explain its sweeping conclusion other than dropping a footnote questioning whether the credible fear process was "sufficient to satisfy constitutional due process requirements." *Id.*, PageID #418 n.7.

Furthermore, the Supreme Court has upheld the constitutionality of the INA's preclusion of review of credible fear proceedings. *Thuraissigiam*, 591 U.S. at 138. In so doing, it has observed that "[a]n

---

[5] At one point, the district court noted that "it is questionable whether" the credible fear procedures available in expedited removal proceedings are "sufficient to satisfy constitutional due process requirements." Order, RE 26, PageID # 418. For that proposition, the district court cited *Make the Road New York*, 805 F. Supp. 3d 139 (D.D.C. 2025), without any analysis). *See id.* Since the time the court below issued its decision, the D.C. Circuit granted the Government's request for a stay of that part of the D.C. District Court's order. *Make the Rd. New York v. Noem*, No. 25-5320, 2025 WL 3563313, at *21 (D.C. Cir. Nov. 22, 2025) ("The Department, however, is likely to succeed in showing that, for those persons determined to be eligible for Expedited Removal, its Credible Fear Procedures are sufficient."); *id.* at *29-30 (discussing credible fear process).

alien subject to expedited removal [] has an opportunity at three levels to obtain an asylum hearing, and the applicant will obtain one unless the asylum officer, a supervisor, and an immigration judge all find that the applicant has not asserted a credible fear." *Id.* at 110. Importantly, an alien "need not show that he or she is in fact eligible for asylum—a 'credible fear' equates to only a 'significant possibility' that the alien would be eligible"–a threshold "screening" standard that is lower than the "well-founded fear standard" required to establish asylum eligibility. *Id.* at 109–10 ("all that an alien must show to avoid expedited removal is a 'credible fear'").

The record in this case illustrates that the agency properly considered Petitioners' credible fear claims and made a negative determination, finding that their claims failed to meet the eligibility requirements under the asylum statute and Convention Again Torture implementing regulations.[6] For example, with regard to M.F.E., the asylum officer—consistent with Circuit case law—found that she failed

---

[6] Under *Thuraissigiam*, the merits of the agency's negative credible fear determinations are unreviewable. 591 U.S. at 138. Respondents discuss them here briefly to show the extent of the district court's error in finding irreparable harm.

to show harm "on account" of a qualifying statutory ground because her fear was based on general violence in Haiti. *See* Credible Fear Worksheet, RE 2-6, PageID #96 (claiming fear of bandits who "attack" "as long as they think you have money"); *id.*, PageID #100-101 (asylum officer explaining negative credible fear finding for M.F.E.); *see also Rodriguez-Tovar v. Lynch*, 628 F. App'x 393, 399 (6th Cir. 2015) ("A generalized fear of violence is insufficient to establish persecution."); *Marqus v. Barr*, 968 F.3d 583, 587 (6th Cir. 2020) (requiring that alien show they would face a "particularized and likely threat of torture [by] a public official, or with the consent or acquiescence of a public official" to qualify for protection under the Convention Against Torture); *see also* 8 C.F.R. §1208.16(c)(2). Thus, the district court erred in concluding that Petitioners' mere assertion of a fear of persecution or torture to Haiti established irreparable harm.

2. On the other side of the ledger, the district court's order significantly harms the Government and public interest. The district court failed to recognize the Government's harm because it assumed the Government would not prevail on the merits. Order, RE 26, PageID #418

44

("there is no public interest in perpetuating unlawful executive action."). But as explained above, that assumption is incorrect.

Further, the harm to Respondents is substantial given the significance of expedited removal to the Government's enforcement efforts. The district court's decision creates an erroneous precedent—both on jurisdiction and the merits—that other courts may follow, thus undermining DHS's enforcement interest in the expeditious removal of certain inadmissible aliens, including paroled arriving aliens. "[W]hen Congress enacted [IIRIRA], it crafted a system for weeding out patently meritless claims and expeditiously removing the aliens making such claims from the country." *Thuraissigiam*, 591 U.S. at 106. Congress was particularly concerned with abuses of the asylum system by such aliens. *See* H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 107 (1996) ("House Report"). Without the procedures for expedited removal, those aliens would be placed in removal proceedings under section 1229a and "could reasonably expect that the filing of an asylum application would allow them to remain indefinitely in the United States." *Thuraissigiam*, 591 U.S. at 118. Congress designed the expedited removal system to bypass

the more "cumbersome and duplicative" procedures for aliens "who arrive in the United States with no valid documents." *Id.* at 107.

The harm to the party opposing the injunction and the public interest merge when the Government is the opposing party. *Nken*, 556 U.S. at 435. "There is always a public interest in prompt execution of removal orders[.]" *Id. at* 436; *accord Sarkisov v. Bondi*, 138 F.4th 976, 979 (6th Cir. 2025); *Nken*, 556 U.S. at 427 ("[A] reviewing court may not … reflexively hold[] a final order in abeyance pending review…. The parties and the public [are] … generally entitled to the prompt execution of orders that the legislature has made final."); *Lucacela v. Reno*, 161 F.3d 1055, 1059 (7th Cir. 1998) (noting the "clear public interest (as expressed by Congress) in deporting illegal aliens without delay," and acknowledging that "Congress made it clear … that public policy has now shifted to enforcing deportation orders immediately"). Thus, the balance of equities tips sharply in Defendants' favor.[7]

---

[7] The district court erroneously interpreted the D.C. Circuit's order in *CHIR* denying the Government's request for a stay pending appeal by reasoning that the D.C. Circuit's no-irreparable-harm finding was based on the Government's ability to apply expedited removal to parolees at the time they presented themselves for initial inspection at a port of entry. Order, RE 26, PageID #417. To the extent that rationale is part of the (continued . . .)

## III. The Court Should Vacate the District Court's Detention Holding and Remand.

If the Court rules in favor of Respondents on the merits of expedited removal, it should vacate the district court's detention ruling and remand for proceedings consistent with this Court's opinion. That is because the district court recognized DHS would have authority to detain Petitioners pursuant to 8 U.S.C. §1225(b)(1) without bond hearings if they were properly subject to expedited removal. Order Granting TRO, RE 15, PageID #333 ("Undoubtedly, mandatory detention correlative to expedited removal does not violate due process."). The district court, however, proceeded to find §1225(b)(1) inapplicable based on its erroneous conclusion that DHS cannot apply expedited removal to Plaintiffs. *Id.* ("If the Court finds the Government acted *ultra vires* in designating Petitioners for expedited removal, its only justification for

---

district court's reasoning in this case regarding the balancing of harms (though the court did not state as such), that reasoning is also wrong because it ignores DHS's enforcement interests in applying expedited removal to parolees based on considerations that were not present at the time the alien was inspected and paroled at the border, i.e., crimes the alien committed after being paroled into the U.S. or the aliens' failure to depart from the country after the parole period expired (as in the case of Petitioners).

47

mandatory detention evaporates.").[8]   Accordingly, the Court should vacate the District Court's detention holding and remand.

## CONCLUSION

The Court should reverse the district court's preliminary injunction and remand to the district court for proceedings consistent with this Court's opinion.

Respectfully submitted,

*/s/ Papu Sandhu*
PAPU SANDHU
*Assistant Director*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, DC 20044
(202) 616-9357

Dated: April 14, 2026

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*
(202) 514-2000

TYLER BECKER
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530

---

[8]  Because the district court determined that expedited removal did not apply to Petitioners and ordered the Government to initiate removal proceedings under 8 U.S.C. §1229a before an Immigration Judge, the court found 8 U.S.C. §1225(b)(2) to be the relevant statutory authority for detention of aliens in §1229a proceedings.  Order, RE 26, PageID #419.

# CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for Sixth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Papu Sandhu*
Papu Sandhu

Dated: April 14, 2026

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because:

1. This brief contains 9,228 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(ii).

2. The brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

/s/ *Papu Sandhu*
Papu Sandhu

Dated:  April 14, 2026          Attorney for Appellants

# ADDENDUM

## APPELLANTS' DESIGNATION OF
## RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to 6th Circuit Rule 30(g), Respondents-Appellants

designate the following relevant district court documents:

| Record Entry | Description | PageID Number Range |
|---|---|---|
| 1 | Petition for Writ of Habeas Corpus | 2-17 |
| 2-6 | Credible Fear Worksheet for M.F.E. | 88-101 |
| 2-8 | IJ Order Finding No Credible Fear for M.F.E. | 106-07 |
| 8 | Plaintiffs' Motion for Temporary Restraining Order | 166-184 |
| 12-1 | Notice of Termination of Parole for E.V. | 231, 288 |
| 12-2 | Expedited Removal Order for E.V. | 232 |
| 12-4 | Record of Negative Credible Fear Finding for E.V. | 234-235 |

| | | |
|---|---|---|
| 12-5 | IJ Order Finding No Credible Fear for E.V. | 239-40 |
| 12-7 | IJ Order Denying E.V.'s Motion to Reopen | 286-87 |
| 12-8 | Notice of Termination of Parole for M.F.E. | 288 |
| 12-9 | Expedited Removal Order for M.F.E. | 289 |
| 12-12 | IJ Order Finding No Credible Fear for M.F.E. | 296-97 |
| 15 | District Court Temporary Restraining Order | 331-337 |
| 26 | District Court Order Granting Preliminary Injunction and Habeas Petition in Part (November 7, 2025) | 405-428 |
| 27 | Respondents' Notice of Petitioners' Release | 429 |
| 30 | Notice of Appeal | 432 |