**No. 26-3015**


**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**


E.V.; M.F.E.,

> *Petitioners-Appellees,*

v.


KEVIN RAYCRAFT, ET AL.,

> *Respondents-Appellants.*


On Appeal from the United States District Court
for the Northern District of Ohio,
No. 4:25-cv-02069 (Hon. Benita Y. Pearson)


**BRIEF FOR PETITIONERS-APPELLEES**


Brian J. Hoffman, Esq.
OCSILiO
P.O. Box 181247
Cleveland Heights, OH 44118
(330) 539-3932
brian@ocsilio.org
*Pro bono Counsel for Petitioners-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 6 Cir. R. 26.1, Petitioners-Appellees E.V. and M.F.E. state that they are individuals, not corporations or other business entities. They have no parent corporation, and no publicly held corporation owns 10% or more of their stock, because they hold no stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................5

STATEMENT REGARDING ORAL ARGUMENT.....................................9

JURISDICTIONAL STATEMENT..............................................................10

STATEMENT OF THE ISSUES....................................................................11

STATEMENT OF THE CASE........................................................................12

    A. Statutory and Regulatory Background............................................12

    B. Petitioners E.V. and M.F.E...............................................................13

    C. Proceedings Below.............................................................................15

SUMMARY OF THE ARGUMENT..............................................................16

STANDARD OF REVIEW.............................................................................19

ARGUMENT.....................................................................................................20

    I. The District Court Had Jurisdiction to Decide Petitioners' Claims.....................20

        A. Section 1252(a)(2)(A) Does Not Bar Review of Whether Respondents Had Any Statutory Authority to Apply Expedited Removal to Parolees...............20

        B. Section 1252(g) Does Not Reach a Claim That Respondents Lacked Authority to Select the Removal Track in the First Place.............................22

        C. Section 1252(b)(9) Does Not Bar Petitioners' Detention Claim................24

    II. The District Court Correctly Held That Petitioners Are Likely to Succeed in Establishing That Section 1225(b)(1) Does Not Authorize Expedited Removal of Noncitizens Paroled at a Port of Entry.................................................................26

        A. Respondents Do Not Defend the District Court's Designation-Provision Ruling, Which Independently Supports Affirmance.....................................26

        B. The "Arriving In" Provision Does Not Cover Someone Who Already Arrived, Was Inspected, and Was Paroled a Year Ago.................................28

        C. Statutory Structure and Legislative History Confirm This Reading..........32

        D. Congress's Use of "Arriving Alien" Elsewhere in Section 1225 Confirms the Different Phrase in the "Arriving In" Provision Was Deliberate.............................................................................................33

        E. No Deference Beyond Skidmore Is Owed to Respondents' Interpretation, and It Does Not Carry the Day....................................................................36

        F. Petitioners Acknowledge a Division of Authority, and the Better-Reasoned Decisions Support Affirmance....................................................................36

        G. *Doe v. Noem* Does Not Compel a Different Result.................................37

    III. The District Court Correctly Weighed the Remaining Preliminary-Injunction Factors...............................................................................................................40

A. Petitioners Face Irreparable Harm Absent Relief.....................................40

B. The Balance of Equities and the Public Interest Favor Petitioners............41

IV. The District Court Correctly Held That Petitioners Are Entitled to an Individualized Bond Hearing..................................................................................42

A. Section 1226(a), Not Section 1225(b)(1), Governs Petitioners' Detention, and Section 1226(a) Requires a Bond Hearing.............................................42

B. In the Alternative, Due Process Independently Requires a Bond Hearing. 45

C. The Bond-Hearing Question Is Not Moot, and Respondents' Own Brief Misstates What Happened...........................................................................46

CONCLUSION..................................................................................................48

CERTIFICATE OF COMPLIANCE..................................................................49

CERTIFICATE OF SERVICE...........................................................................50

ADDENDUM A.................................................................................................51

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS..............51

ADDENDUM B.................................................................................................52

TEXT OF RELEVANT STATUTORY AND REGULATORY PROVISIONS.....52

# TABLE OF AUTHORITIES

CASES

*Alfonso v. Current Warden, Miramar ICE Field Office*, No. 25-cv-21387 (S.D. Fla. Apr. 22, 2026)..........................................................................................................26

*Angelo Antonio Bellia Castillo v. Sam Olson*, 2026 WL 1894096 (N.D. Ill. July 1, 2026) ........................................................................................................................37

*Awad v. Obama*, 608 F.3d 1 (D.C. Cir. 2010)..............................................................19

*Bahena v. Trump*, 2026 WL 312708 (E.D. Ky. Feb. 5, 2026).......................................37

*Bekzada v. Fields*, 2026 WL 696555 (E.D. Ky. Mar. 12, 2026)....................................37

*Bondi v. VanDerStock*, 145 S. Ct. 857 (2025).......................................................19, 30, 36

*Borden v. United States*, 593 U.S. 420 (2021)..............................................................34

*Branch v. Smith*, 538 U.S. 254 (2003)...................................................................29, 30

*Chirinos Chirinos v. Tindell*, 2026 WL 926941 (W.D. Ky. 2026)................................36

*Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48 (D.D.C. 2025) 9, 38

*Colina-Rojas v. Noem*, 2026 WL 412138 (W.D. Ky. Feb. 13, 2026)............................48

*Cordero Pelico v. Kaiser*, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025)........................44

*Dean v. United States*, 556 U.S. 568 (2009)..................................................................34

*DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020).................................................23

*Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020)...............26, 45

*Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025)..................................................................37

*E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 2938594 (N.D. Ohio Oct. 16, 2025). .15, 38

*Elgharib v. Napolitano*, 600 F.3d 597 (6th Cir. 2010)..................................................25

*Fieran v. INS*, 268 F.3d 340 (6th Cir. 2001)..................................................................31

*Garcia v. Andrews*, 2025 WL 2420068 (E.D. Cal. 2025).............................................38

*Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018).......................................................25

*Hartman v. Acton*, 613 F. Supp. 3d 1015 (S.D. Ohio 2020).........................................40

*Jacobo-Ramirez v. Mullin*, 2026 WL 879799 (D. Nev. Mar. 30, 2026)........................32

*Jazz Pharms., Inc. v. Kennedy*, 141 F.4th 254 (D.C. Cir. 2025)...................................29

*Jennings v. Rodriguez*, 583 U.S. 281 (2018).................................................................43

*Kaplan v. Tod*, 267 U.S. 228 (1925)..............................................................................28

*Keeley v. Whitaker*, 910 F.3d 878 (6th Cir. 2018).........................................................34

*King v. Burwell*, 576 U.S. 473 (2015)................................................................................35

*Kucana v. Holder*, 558 U.S. 233 (2010)............................................................................22

*Kumar v. Stevens*, 2026 WL 1129594 (N.D. Ohio Apr. 27, 2026)..................................25

*Kurapati v. INS*, 775 F.2d 1216 (11th Cir. 1985)............................................................21

*Leng May Ma v. Barber*, 357 U.S. 185 (1958).................................................................28

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)..........................................19, 36

*Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026)..................................34, 45, 46

*Make the Road New York v. Noem*, No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025)..................................................................................................................................45

*Mantena v. Johnson*, 809 F.3d 721 (2d Cir. 2015)..........................................................21

*Marqus v. Barr*, 968 F.3d 583 (6th Cir. 2020).................................................................40

*Martinez Herrera v. Olson*, No. 4:26-cv-52, 2026 WL 561101 (W.D. Ky. 2026).….35, 43

*Matkarimov v. Noem*, 2026 WL 700072 (E.D. Ky. Mar. 12, 2026)................................37

*Mathews v. Eldridge*, 424 U.S. 319 (1976)................................................................18, 45

*Matter of C-P-Y-*, 29 I. & N. Dec. 610 (BIA 2026)........................................................35

*Matter of M-D-C-V-*, 28 I. & N. Dec. 18 (BIA 2020)......................................................35

*McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337 (1991)................................................34

*Mendoza-Linares v. Garland*, 51 F.4th 1146 (9th Cir. 2022).........................................20

*Millan v. Voorhies*, 2026 WL 248376 (N.D. Ohio Jan. 30, 2026).................................25

*Moctezuma-Reyes v. Garland*, 124 F.4th 416 (6th Cir. 2024)........................................34

*Mullin v. Al Otro Lado*, 609 U.S. ---- (June 25, 2026)...................................................39

*Musunuru v. Lynch*, 831 F.3d 880 (7th Cir. 2016)..........................................................21

*Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566 (6th Cir. 2002)...........19

*Patel v. Tindall*, 810 F. Supp. 3d 824 (W.D. Ky. 2025).................................................35

*Penott Rodriguez v. Fields*, 2026 WL 1078101 (E.D. Ky. Apr. 21, 2026).....................37

*Polanco v. Fields*, 2026 WL 1134862 (E.D. Ky. Apr. 27, 2026)....................................37

*Puentes v. Raycraft*, No. 1:26-cv-193 (W.D. Mich. June 8, 2026).................................38

*Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999)....................23

*Rodriguez v. Woosley*, 823 F. Supp. 3d 718, 2026 WL 36345 (W.D. Ky. Jan. 6, 2026). .25

*Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274 (E.D.N.Y. 2025).......................38

*Rodriguez-Tovar v. Lynch*, 628 F. App'x 393 (6th Cir. 2015)........................................40

*Rowe v. New Hampshire Motor Transp. Ass'n,* 552 U.S. 364 (2008)........................29, 30

*Russello v. United States,* 464 U.S. 16 (1983)....................................................34

*Salazar v. Kaiser,* 2025 WL 2456232 (E.D. Cal. 2025)....................................38

*Shweika v. Dep't of Homeland Sec.,* 723 F.3d 710 (6th Cir. 2013)................................22

*Singh v. Olson,* 2026 WL 988505 (E.D. Ky. 2026)..........................................35

*Singh v. Rosen,* 984 F.3d 1142 (6th Cir. 2021)........................................22, 34

*Tazu v. Att'y Gen. U.S.,* 975 F.3d 292 (3d Cir. 2020)........................................23

*Tomaszczuk v. Whitaker,* 909 F.3d 159 (6th Cir. 2018)........................................34

*Turner v. Rogers,* 564 U.S. 431 (2011)............................................................47

*United States v. Balint,* 201 F.3d 928 (7th Cir. 2000)....................................28

*Zadvydas v. Davis,* 533 U.S. 678 (2001)....................................................46

*Zamirov v. Olson,* 2025 WL 2618030 (N.D. Ill. 2025)....................................36

STATUTES

8 U.S.C. § 1101(a)(13)(A)............................................................................27

8 U.S.C. § 1182(a)(9)(B)(ii)..........................................................................27

8 U.S.C. § 1182(d)(5)(A)......................................................12, 28, 30, 43, 54

8 U.S.C. § 1225(a)(1)..........................................................................29, 54

8 U.S.C. § 1225(a)(2)....................................................................................33

8 U.S.C. § 1225(b)(1). .9, 11, 12, 17, 20, 21, 26, 28, 29, 30, 31, 33, 34, 37, 39, 42, 43, 44, 46, 47, 52

8 U.S.C. § 1225(c)(1)....................................................................................33

8 U.S.C. § 1226(a)....................................................18, 32, 42, 43, 44, 45, 55

8 U.S.C. § 1229a....................................................12, 15, 16, 17, 23, 43, 44, 47

8 U.S.C. § 1252(a)(2)(A)..........................................................11, 20, 21, 22

8 U.S.C. § 1252(b)(9)......................................................................24, 25, 26

8 U.S.C. § 1252(e)..........................................................................20, 21, 22

8 U.S.C. § 1252(f)(1)....................................................................................25

8 U.S.C. § 1252(g)..........................................................11, 16, 22, 23, 24, 25, 26

8 U.S.C. § 1255(a)........................................................................................27

28 U.S.C. § 1292(a)(1)............................................................................10, 16

28 U.S.C. § 1331........................................................................................10

28 U.S.C. § 2241.................................................................................................10

REGULATIONS

8 C.F.R. § 1.2..................................................................................................28

8 C.F.R. § 212.5(e)(2)(i).........................................................................29, 31, 53

8 C.F.R. § 235.3(b)(1)......................................................................................28, 53

8 C.F.R. § 235.3(b)(6)...........................................................................................53

8 C.F.R. § 1236.1(d)..............................................................................................43

OTHER AUTHORITIES

90 Fed. Reg. 13,611 (Mar. 25, 2025).....................................................................13

62 Fed. Reg. 10,312 (Mar. 6, 1997).......................................................................32

71 Fed. Reg. 27,585 (May 12, 2006)......................................................................53

Fed. R. App. P. 32...................................................................................................49

6 Cir. R. 26.1........................................................................................................... 2

6 Cir. R. 28..............................................................................................................51

6 Cir. R. 32..............................................................................................................49

## STATEMENT REGARDING ORAL ARGUMENT

Petitioners-Appellees believe oral argument would assist the Court. This appeal presents a significant, recurring statutory question -- whether 8 U.S.C. § 1225(b)(1) authorizes expedited removal of noncitizens who were inspected and paroled at a port of entry -- on which district courts are divided, and which is the subject of closely related litigation in the District of Columbia Circuit, *Coalition for Humane Immigrant Rights v. Noem*, No. 25-5289. Oral argument would allow the Court to explore that division of authority and its interaction with this case.

9

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal from an order granting a preliminary injunction under 28 U.S.C. § 1292(a)(1). The district court had jurisdiction under 28 U.S.C. §§ 2241 and 1331, for the reasons set forth in Argument I below.

## STATEMENT OF THE ISSUES

1. Whether the district court had jurisdiction to decide Petitioners' claim that Respondents lack statutory authority to apply expedited removal to noncitizens who were inspected and paroled at a port of entry, notwithstanding 8 U.S.C. §§ 1252(a)(2)(A), (b)(9), and (g).

2. Whether the district court correctly held that Petitioners are likely to succeed in establishing that 8 U.S.C. § 1225(b)(1) does not authorize expedited removal of noncitizens who were inspected and paroled at a port of entry, where both the Designation Provision and the "Arriving In" Provision expressly exclude such individuals.

3. Whether the district court acted within its discretion in weighing the remaining preliminary-injunction factors -- irreparable harm, the balance of equities, and the public interest -- in Petitioners' favor.

4. Whether the district court correctly held, independent of the merits of Issue 2, that Petitioners' prolonged detention without an individualized bond hearing violated the Due Process Clause of the Fifth Amendment, and, alternatively, that Petitioners are entitled to such a hearing.

11

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

Congress created two distinct tracks for removing noncitizens from the United States. Under 8 U.S.C. § 1229a, a noncitizen is entitled to a hearing before an immigration judge, the right to counsel at no expense to the government, the opportunity to present and contest evidence, and judicial review. By contrast, 8 U.S.C. § 1225(b)(1) authorizes "expedited removal" -- summary removal without a hearing before an immigration judge -- but only for two narrow, textually defined categories: (1) noncitizens covered by the "Designation Provision," 8 U.S.C. § 1225(b)(1)(A)(iii), which reaches certain noncitizens physically present in the United States for less than two years who "ha[ve] not been admitted or paroled"; and (2) noncitizens covered by the "Arriving In" Provision, 8 U.S.C. § 1225(b)(1)(A)(i), which reaches noncitizens "arriving in the United States." The statute's own title -- "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" -- confirms these are two distinct, non-overlapping categories. 8 U.S.C. § 1225(b)(1) (heading).

Separately, 8 U.S.C. § 1182(d)(5)(A) authorizes the Secretary of Homeland Security to "parole" noncitizens into the United States "for urgent humanitarian reasons or significant public benefit." Beginning in October 2022 and expanded in January 2023, DHS created the CHNV process for nationals of Cuba, Haiti,

Nicaragua, and Venezuela, through which several hundred thousand individuals -- including Petitioners -- were inspected, vetted, and paroled into the United States at ports of entry. On March 25, 2025, DHS published a Federal Register notice terminating CHNV parole for all beneficiaries whose parole had not already expired, "regardless of when they entered the country or their individual circumstances," effective April 24, 2025. 90 Fed. Reg. 13,611 (Mar. 25, 2025). Beginning in mid-2025, DHS began applying expedited removal to former CHNV parolees whose parole had lapsed -- a marked departure from decades of prior practice.

## B. Petitioners E.V. and M.F.E.

Petitioners are both citizens of Haiti who were granted parole under the CHNV process; that grant of parole was later revoked. RE 24, PageID #401 (Joint Factual Stipulations ¶¶ 1-3).

Petitioner E.V. fled targeted political violence: her husband, a longtime pro-democracy activist and former candidate for Mayor of Port-au-Prince, was targeted by the Viv Ansanm gang coalition, and E.V. herself narrowly escaped an attempted kidnapping in June 2024. RE 1, PageID #6-7 (Pet. ¶¶ 16, 24). She was inspected and paroled into the United States at Fort Lauderdale, Florida, on July 16, 2024, under the CHNV process, with an initial parole period through June 12, 2025. RE 1, PageID #2, 6-7 (Pet. ¶¶ 2, 16, 25); Ex. A.

13

Petitioner M.F.E. is also a Haitian citizen, over 70 years old, who fled violence in Haiti. She was inspected and paroled at a U.S. port of entry in Miami, Florida, on May 12, 2024, under the same CHNV process, with the same initial parole period through June 12, 2025. RE 1, PageID #2, 6, 8-9 (Pet. ¶¶ 2, 17, 30); Ex. C.

Both Petitioners lived openly and lawfully in the United States for more than a year following their parole. Neither committed any crime. When DHS announced in October 2024 that it would not renew CHNV parole for any beneficiary, and then terminated the program outright effective April 24, 2025, Petitioners lost status not because of anything they did, but because of a categorical policy decision made in Washington that applied regardless of individual circumstances. RE 1, PageID #3, 12-13 (Pet. ¶¶ 3, 37-38). There is no evidence that Petitioners were ever made aware of the termination their parole program.

On July 29, 2025, Petitioners -- who were merely passengers in a vehicle that broke down in Mahoning County, Ohio -- were taken into custody by ICE after local traffic authorities contacted federal immigration officials. RE 1, PageID #3, 5-6 (Pet. ¶¶ 3, 9, 16, 17). Both were served that day with a Notice and Order of Expedited Removal (Form I-860); both declined to sign it. RE 1, PageID #6 (Pet. ¶¶ 16, 17); Exs. B, D. Both were then detained, at times without adequate treatment for serious medical needs: E.V. suffers from a painful umbilical hernia condition that went untreated for a period during her detention, and M.F.E., who is over 70 years old,

14

was denied the eyeglasses she needs to read legal documents. RE 1, PageID #4, 6-9 (Pet. ¶¶ 7, 16, 17, 27, 31); Ex. F.

## C. Proceedings Below

Petitioners filed this action for a writ of habeas corpus on September 29, 2025, challenging Respondents' authority to apply expedited removal to them given their history of inspection and parole, and separately challenging their prolonged detention without an individualized bond hearing. RE 1, PageID #1-21. On October 16, 2025, the district court granted a temporary restraining order that had the effect of placing Petitioners into regular proceedings under 8 U.S.C. § 1229a before an immigration judge. E.V. v. Raycraft, No. 4:25-cv-2069, 2025 WL 2938594 (N.D. Ohio Oct. 16, 2025) RE 15, 16.

On November 7, 2025, the district court (Pearson, J.) granted Petitioners' motion for a preliminary injunction and granted the habeas petition in part, holding (1) that Respondents lack statutory authority to apply expedited removal to noncitizens, like Petitioners, who were inspected and paroled at a port of entry, and that Petitioners are therefore entitled to regular removal proceedings under Section 1229a; and (2) that Petitioners' year-long, lawful residence in the United States under parole gave rise to a Fifth Amendment liberty interest sufficient to require an individualized bond hearing, at which the government bears the burden of justifying continued detention. RE 26, PageID #404. The order gave Respondents until

15

November 14, 2025 to either provide Petitioners a bond hearing or release them under conditions of supervision. RE 26, PageID #404. Respondents elected release: they filed notice that Petitioners had been released, without a bond hearing, on their own recognizance. RE 27. Respondents' appellate brief's statement that Petitioners were "given bond hearings and released" is incorrect and contradicted by Respondents' own filing below. See Section IV.C, infra. Judgment entered on November 25, 2025. RE 29. Petitioners' Section 1229a removal proceedings remain pending before an immigration judge. Respondents filed a timely notice of appeal on January 6, 2026. RE 30. This appeal followed. 28 U.S.C. § 1292(a)(1).

## SUMMARY OF THE ARGUMENT

This case is one of statutory text and structure, not policy. Congress created two, and only two, categories of noncitizens subject to expedited removal: those "arriving in" the country, and certain undesignated entrants without inspection who have not been paroled. Neither category covers Petitioners, who were inspected, granted humanitarian parole, and lived in the United States for over a year before their parole was terminated by categorical policy decision. The district court's order should be affirmed in full.

First, the district court had jurisdiction to decide Petitioners' claims. Sections 1252(a)(2)(A), (b)(9), and (g) bar review of discretionary removal decisions and detention-track claims coupled to removal orders; they do not bar review of the

16

antecedent legal question whether Respondents had any statutory authority to invoke expedited removal against an entire category of people in the first place.

Second, the district court correctly held that Petitioners are likely to succeed in establishing that Section 1225(b)(1) does not authorize expedited removal of noncitizens, like Petitioners, who were paroled at a port of entry. Respondents do not defend the district court's Designation Provision ruling on appeal at all, having expressly disclaimed reliance on it, Appellants' Br. 8, 18, 40 n.4, leaving the "Arriving In" Provision as the only ground Respondents press. That provision, by its plain terms, describes an ongoing act of reaching the country -- not a permanent status retroactively assigned to someone who arrived, was inspected, and was paroled a year earlier. Neither Respondents' 1997/2006 regulatory history nor the interpretive canons they invoke overcomes that text, and no deference beyond Skidmore's "power to persuade" is available after *Loper Bright*. Although a minority of district courts have read the statute differently, the better-reasoned and now-larger body of authority -- including the court below -- supports Petitioners' reading, for the reasons explained in Section II.F.

Third, the district court acted within its discretion in weighing the remaining preliminary-injunction factors -- irreparable harm, the balance of equities, and the public interest -- in Petitioners' favor. Loss of the procedural protections of Section 1229a proceedings is itself a cognizable, irreparable harm, and the public has no

17

interest in the continued ultra vires application of expedited removal to individuals Congress excluded from it.

Fourth, and independent of the merits of the removal-authority question, the district court correctly held that Petitioners' prolonged detention without an individualized bond hearing violated the Due Process Clause. Applying *Mathews v. Eldridge*, 424 U.S. 319 (1976), the district court found that Petitioners' year of lawful, government-authorized residence created a substantial liberty interest, that the risk of erroneous deprivation without a hearing was high -- particularly given Respondents' own shifting theories below about which detention statute even applied -- and that the government's interest in categorical, hearing-free detention was minimal given that individualized bond hearings are the routine practice for similarly situated noncitizens. That constitutional holding is independently supported by the statutory structure itself: Sections 1225 and 1226 are mutually exclusive, so once Petitioners are outside expedited removal, their detention is necessarily governed by Section 1226(a), which entitles them to an individualized bond hearing as a matter of course. Respondents' own brief confirms Petitioners were in fact released without any bond hearing on November 14, 2025 -- not, as Respondents' brief mistakenly states, "given bond hearings," Appellants' Br. 17 -- a factual point that matters because it forecloses any suggestion that Petitioners already received the process this appeal concerns.

18

## STANDARD OF REVIEW

This Court reviews a district court's ultimate decision to grant a preliminary injunction for abuse of discretion, its legal conclusions de novo, and its factual findings for clear error. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). If the district court's "account of the evidence is plausible in light of the record viewed in its entirety," this Court may not reverse it even if it might have weighed the evidence differently. *Awad v. Obama*, 608 F.3d 1, 7 (D.C. Cir. 2010).

No deference beyond Skidmore's "power to persuade" is owed to Respondents' interpretation of the governing statutes. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), forecloses Chevron-style deference to an agency's reading of the statutes it administers. Respondents themselves do not ask for Chevron deference; they ask only for the "due respect" a contemporaneous, consistently maintained agency view can earn under Skidmore, citing *Bondi v. VanDerStock*, 145 S. Ct. 857, 874 (2025). See Section II.E, infra (explaining why that persuasive weight does not carry Respondents' reading here).

### ARGUMENT

## I. The District Court Had Jurisdiction to Decide Petitioners' Claims

### A. Section 1252(a)(2)(A) Does Not Bar Review of Whether Respondents Had Any Statutory Authority to Apply Expedited Removal to Parolees

The district court held that it had jurisdiction to decide whether Respondents had any statutory authority to apply expedited removal to parolees at all, because that antecedent legality question is distinct from the discretionary implementation decisions Section 1252(a)(2)(A) protects. RE 26, PageID #414-15.

Respondents argue that all four clauses of Section 1252(a)(2)(A) bar review here: that Petitioners' claim "aris[es] from or relat[es] to the implementation or operation of an order of removal," challenges DHS's "decision ... to invoke" expedited removal, challenges the "application" of Section 1225(b)(1) to "individual alien[s]," and challenges the 1997 and 2006 regulations themselves as "procedures and policies adopted" to implement the statute. Appellants' Br. 20-25 (quoting *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1154-55 (9th Cir. 2022) (Congress "could scarcely have been more comprehensive")). Respondents further argue that Section 1252(e)(2)'s habeas exception reaches only citizenship, removal-order-existence, and lawful-permanent-resident/refugee-status questions, that Section 1252(e)(5) separately bars review of "whether the alien is actually inadmissible," and that the only avenue to challenge the validity of the regulations themselves was

20

a suit in the District of Columbia within 60 days of their first implementation under Section 1252(e)(3) -- decades ago. Appellants' Br. 21-27.

However, every one of Respondents' four Section 1252(a)(2)(A) clause arguments presupposes that Section 1225(b)(1) validly applies to the noncitizen in question in the first place, and protects the government's discretion in implementing that valid authority. The statute *does not* insulate the antecedent legal question whether Section 1225(b)(1) reaches a category of people, former parolees, at all. Courts have consistently distinguished that kind of ultra vires, threshold-authority question from the discretionary determinations Section 1252(a)(2)(A) protects. See *Mantena v. Johnson*, 809 F.3d 721 (2d Cir. 2015); *Musunuru v. Lynch*, 831 F.3d 880 (7th Cir. 2016); *Kurapati v. INS*, 775 F.2d 1216 (11th Cir. 1985).[1]

Respondents' reading of Section 1252(e) proves too much for the same reason: if simply connecting a claim to an individual removal order were enough to trigger the Section 1252(a)(2)(A) bar, no court could ever decide whether Section 1225(b)(1) applies to a category of people at all, because every such challenge necessarily arises in the context of an individual's order. Congress preserved a narrow habeas channel in Section 1252(e) for exactly this kind of threshold challenge to the

---

[1] *Mendoza-Linares* does not hold otherwise: that case addressed a challenge to how expedited removal was carried out for a noncitizen concededly subject to it, not a challenge to whether the statute reaches him at all. 51 F.4th at 1154-55.

expedited-removal scheme, and the presumption of judicial review of agency action counsels against reading Section 1252(a)(2)(A) to swallow that channel whole.

Nor does Section 1252(e)(3)'s 60-day D.D.C. suit window supply the exclusive vehicle for this challenge: that provision governs pre-enforcement challenges to the validity of regulations implementing the statute, not an as-applied habeas challenge to whether an admittedly valid regulation was correctly applied to a specific class of noncitizens years later. The correct reading -- and the one the district court adopted -- is that Section 1252(a)(2)(A) protects discretionary implementation of an authorized order, not the logically prior question whether any such order could lawfully issue against this class of noncitizen in the first place. This reading also follows from the broader principle that courts independently determine the scope of their own jurisdiction and owe no deference to an agency's view of that scope. *Kucana v. Holder*, 558 U.S. 233 (2010); *Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710 (6th Cir. 2013); *Singh v. Rosen*, 984 F.3d 1142 (6th Cir. 2021).

### B. Section 1252(g) Does Not Reach a Claim That Respondents Lacked Authority to Select the Removal Track in the First Place

The district court held that Section 1252(g) -- which bars jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act" -- does not bar a challenge to

22

whether Respondents had authority to select the expedited-removal track in the first place. RE 26, PageID #411-13.

Respondents argue, citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999), and *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298 (3d Cir. 2020), that Petitioners' request to be placed in Section 1229a proceedings is an attack on DHS's "prosecutorial discretion" to "commence" removal proceedings, which Section 1252(g) squarely bars, and that allowing a statutory-interpretation label to evade Section 1252(g) "would gut" the provision. Appellants' Br. 27-29.

However, the Supreme Court has already rejected the broad reading Respondents advance. In *Reno v. American-Arab Anti-Discrimination Committee* itself, the Court held that Section 1252(g) is not a "zipper" clause that says "no judicial review in deportation cases unless this section provides judicial review," but instead applies only to the three discrete actions it names -- expressly distinguishing "many other decisions or actions that may be part of the deportation process," including decisions to open an investigation, to surveil a suspected violator, or to reschedule a hearing. 525 U.S. at 482, 487. In *DHS v. Regents of the University of California*, the Court likewise held that Section 1252(g) did not bar review of the antecedent legality of DHS's rescission of a discretionary-relief policy, even though that rescission was itself inextricably tied to the government's enforcement priorities. 591 U.S. 1 (2020). *Tazu* does not help Respondents: that case involved a challenge

23

to the Attorney General's decision to proceed against a particular noncitizen under a concededly applicable removal ground, 975 F.3d at 298, not a challenge to whether the removal-track statute reaches the noncitizen at all. The question whether Respondents had authority to designate Petitioners for expedited removal at all is analytically prior to, and independent of, any decision to commence a particular proceeding -- just as the rescission decision in *Regents* was itself an enforcement-adjacent act, yet the Court still reviewed whether it was validly reasoned. If mere connection to an eventual removal proceeding were enough to trigger Section 1252(g), virtually no aspect of the government's immigration-enforcement apparatus could ever be reviewed -- a result *Reno* and *Regents* both rejected, and *Tazu* does not disturb.

### C. Section 1252(b)(9) Does Not Bar Petitioners' Detention Claim

The district court held that Section 1252(b)(9), which channels "all questions of law and fact ... arising from any action taken or proceeding brought to remove an alien" to the courts of appeals on petition for review, does not bar Petitioners' detention claim. RE 26, PageID #415-16.

Respondents argue that Petitioners' detention claim is "inextricably intertwined" with their expedited-removal challenge, such that all of it must funnel through the petition-for-review channel, and that the district court's rationale -- that

24

courts may always review "how" discretion is exercised -- is unsupported and would swallow the jurisdictional bars Congress enacted. Appellants' Br. 29-31.

This Court has already recognized that detention-based claims are jurisdictionally distinct from claims attacking the commencement of removal proceedings. *Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018) (Section 1252(g) and (f)(1)); *Elgharib v. Napolitano*, 600 F.3d 597 (6th Cir. 2010). Sister courts applying that same distinction directly to Section 1252(b)(9) have held that a claim of unlawful detention -- as opposed to a challenge to a removal order or the commencement of removal proceedings -- does not "arise from" an action to remove an alien within the meaning of the statute, and that Section 1252(b)(9)'s "zipper clause" does not require such a claim to be raised as a petition for review in the courts of appeals. *Rodriguez v. Woosley*, 823 F. Supp. 3d 718, 2026 WL 36345 (W.D. Ky. Jan. 6, 2026); *Kumar v. Stevens*, 2026 WL 1129594 (N.D. Ohio Apr. 27, 2026); *Millan v. Voorhies*, 2026 WL 248376 (N.D. Ohio Jan. 30, 2026).

Petitioners' detention claim challenges the fact and duration of their custody under a detention provision Petitioners contend does not apply to them, not any element of a removal order, and does not "arise from" a proceeding to remove them within the meaning of the statute. Respondents' "inextricably intertwined" characterization proves too much: it would collapse this detention/removal distinction any time a detention claim and a removal claim happen to share a

25

common defendant or a common set of facts, which is true in nearly every immigration-detention case. Where, as here, a noncitizen's detention persists independent of and beyond the immediate removal determination, courts have found the relationship between detention and removal too indirect for Section 1252(b)(9) to apply. Cf. *Alfonso v. Current Warden, Miramar ICE Field Office*, No. 25-cv-21387 (S.D. Fla. Apr. 22, 2026) (three-month gap between detention and removal demonstrated the "indirect" nature of that relationship for Section 1252(g) purposes). Nor does *Thuraissigiam* help Respondents here: that decision addressed a due process challenge to the adequacy of credible-fear review for a noncitizen who remained an "arriving alien" throughout and was never released into the interior. *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). It did not address, and does not foreclose, a habeas challenge to whether the expedited-removal scheme applies to a class of noncitizens at all, or a due-process challenge to the detention of someone previously released into the interior for over a year under parole.

## II. The District Court Correctly Held That Petitioners Are Likely to Succeed in Establishing That Section 1225(b)(1) Does Not Authorize Expedited Removal of Noncitizens Paroled at a Port of Entry

### A. Respondents Do Not Defend the District Court's Designation-Provision Ruling, Which Independently Supports Affirmance

The district court held that the Designation Provision, 8 U.S.C. § 1225(b)(1) (A)(iii), independently excludes Petitioners because it permits expedited removal

only of certain noncitizens physically present in the United States for less than two years who "ha[ve] not been admitted or paroled" -- and Petitioners were paroled. RE 15, PageID #346.

Respondents do not defend this ruling on appeal. Their brief expressly states that "Respondents do not rely on this Designation Provision in defending DHS's application of expedited removal to Petitioners but instead rely on DHS's 'arriving in' authority as implemented by the regulations." Appellants' Br. 8; see also id. at 18, 40 n.4.

Respondents' concession matters. An argument not raised in an opening brief is forfeited, and the district court's Designation Provision ruling stands unchallenged as an independent, alternative ground for affirmance regardless of how this Court resolves the "Arriving In" Provision dispute addressed below. The ruling is also correct on its own terms: "paroled" in the Designation Provision, like "admitted" beside it, asks whether a completed, historical event occurred, not whether some ongoing status persists today. 8 U.S.C. § 1101(a)(13)(A) (defining "admitted" by reference to a discrete event). Parole's legal effects persist after the parole period ends -- a noncitizen may adjust status under 8 U.S.C. § 1255(a) even after parole terminates, and periods of parole continue to toll unlawful presence under 8 U.S.C. § 1182(a)(9)(B)(ii) after termination -- confirming that "paroled" describes a fact about the person's history, not a status that evaporates the moment DHS revokes it.

27

## B. The "Arriving In" Provision Does Not Cover Someone Who Already Arrived, Was Inspected, and Was Paroled a Year Ago

The district court held that the "Arriving In" Provision, 8 U.S.C. § 1225(b)(1)(A)(i), which applies to noncitizens "arriving in the United States," describes an ongoing act of reaching the country -- not a permanent, retroactive status assigned to anyone who has ever arrived -- and so does not reach Petitioners, who arrived, were inspected, and were paroled more than a year before Respondents attempted to apply expedited removal to them.

This is Respondents' central merits argument. Respondents rely on a regulation, first promulgated in 1997 and amended in 2006, providing that "an arriving alien remains such even if paroled," now further specifying that this remains true "even after any such parole is terminated or revoked." 8 C.F.R. § 1.2 (1997); id. § 235.3(b)(1) (2006); Appellants' Br. 31-40. They argue: (1) the present-progressive verb "arriving" denotes a continuing status, not a one-time historical event, citing *United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000) (present-progressive tense "generally indicates continuing action"); (2) Section 1182(d)(5)(A) itself states that parole "shall not be regarded as an admission," so a parolee remains legally unadmitted regardless of how long parole lasts; (3) this reflects the settled "entry fiction" of *Leng May Ma v. Barber*, 357 U.S. 185 (1958), and *Kaplan v. Tod*, 267 U.S. 228 (1925) (parolee "gain[s] no foothold" even after eight years of parole), which Congress is presumed to have imported when it enacted "arriving in" in 1996,

28

because a statutory term "brings the old soil with it," *Jazz Pharms., Inc. v. Kennedy*, 141 F.4th 254, 263 (D.C. Cir. 2025) (cleaned up); see also *Branch v. Smith*, 538 U.S. 254, 281 (2003) (corpus juris canon); *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008) (settled-judicial-interpretation canon); and (4) 8 C.F.R. § 212.5(e)(2)(i), which provides that after parole terminates "further inspection or hearing shall be conducted under section 235 [1225] or 240 [1229a]," shows that Section 235 expedited removal remains available post-termination, contrary to the district court's reading of that same regulation below.

However, none of this overcomes the statute's text and structure. As an initial matter, the "Arriving In" Provision's use of the present progressive is not incidental: Section 1225(b)(1)(A)(i) applies to an alien "who is arriving in the United States," while the neighboring applicant-for-admission definition, enacted in the same statute, describes an alien "who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1) (emphasis added). Congress's choice to use the present progressive "arriving" in one provision and the simple present "arrives" in the very next subsection confirms the distinction is deliberate, not stylistic. First, the present-progressive-tense argument proves too little: whether a present-progressive verb describes an ongoing state or a completed transition depends on context, and *Balint's* observation about a general grammatical tendency -- made in construing an entirely different, non-immigration criminal statute, 201 F.3d at 933 -- cannot override the

29

immigration statute's own structure, which treats "aliens arriving in the United States" and "certain other aliens who have not been admitted or paroled" as two distinct, non-overlapping categories in the very heading of Section 1225(b)(1). If "arriving" already covered every parolee indefinitely, the Designation Provision's parallel "has not been admitted or paroled" category would be superfluous for parolees -- a result that violates the presumption against surplusage.

Second, Section 1182(d)(5)(A)'s "shall not be regarded as an admission" clause does not answer the "arriving in" question at all; it answers a different question (whether parole counts as an admission), and Respondents' regulation cannot use that unrelated clause to stretch "arriving in" past its ordinary, present-tense meaning. Agencies may not use a regulation to read a temporal limit out of a statute Congress wrote in the present progressive; at most the regulation is owed the "due respect" *Skidmore* and *Bondi v. VanDerStock*, 145 S. Ct. 857, 874 (2025), afford a persuasive-but-non-binding view, and that persuasive value is undercut by DHS's own decades of contrary enforcement practice. See Section II.E, infra.

Third, the corpus-juris and settled-judicial-interpretation canons Respondents invoke, *Branch v. Smith* and *Rowe v. New Hampshire Motor Transp. Ass'n*, import a pre-existing judicial gloss only where Congress adopts a term that already had a settled meaning before Congress acted. But "arriving in the United States" is IIRIRA's own new 1996 coinage, deliberately replacing the older

30

"entry"/"exclusion" vocabulary that *Kaplan* and *Leng May Ma* construed -- the very vocabulary shift this Circuit has itself recognized. See *Fieran v. INS*, 268 F.3d 340 (6th Cir. 2001). There is no settled pre-1996 judicial construction of the specific phrase "arriving in the United States" for Congress to have imported, so *Jazz Pharms.'s* "old soil" metaphor, which addresses interpretation of inherited statutory language, does not carry Respondents' reading of new statutory language enacted to modernize, not perpetuate, the pre-IIRIRA framework.

Fourth, 8 C.F.R. § 212.5(e)(2)(i)'s instruction that post-termination review proceed "under section 235 [1225] or 240 [1229a]" is disjunctive and circular, not an answer to which track applies -- it says a former parolee goes through whichever of the two tracks properly fits their circumstances, which is precisely the question this case presents. It does not say, and cannot be read to say, that Section 235 always applies regardless of whether the noncitizen is actually "arriving" at the time. Reading it Respondents' way also produces an absurd result: a noncitizen who entered without inspection at all could no longer be subject to expedited removal after two years of physical presence, 8 U.S.C. § 1225(b)(1)(A)(iii), while a noncitizen who did everything right -- presented at a port of entry, submitted to inspection, and was granted parole -- could face expedited removal indefinitely, with no time limit at all. Congress does not hide so perverse a result in a provision aimed at simplifying enforcement against unlawful entrants.

31

### C. Statutory Structure and Legislative History Confirm This Reading

DHS's own past designations of the Designation Provision (2004, 2019, and the designation in effect through 2024) expressly described that provision as covering only those who "entered without admission or parole," treating arriving noncitizens at ports of entry as addressed separately. This tracks a consistent, decades-long DHS/DOJ practice, documented contemporaneously in the agency's own 1997 rulemaking, of treating noncitizens who are not subject to expedited removal or mandatory detention under Sections 1225(b)(1), 1226(c), or 1231 as eligible for a Section 1226(a) bond redetermination hearing. See 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997); *Jacobo-Ramirez v. Mullin*, 2026 WL 879799 (D. Nev. Mar. 30, 2026) (describing this consistent, nearly thirty-year practice). DHS did not apply expedited removal to former parolees at scale until 2025, confirming that its own longstanding enforcement practice never read the statute the way it now urges -- notwithstanding that the 1997/2006 regulatory text Respondents rely on has existed, unused this way, for nearly two decades.

Respondents' legislative-history argument, which invokes House Report No. 469, 104th Cong. (1996), to show Congress created expedited removal to stop noncitizens from exploiting asylum filings to "remain indefinitely," Appellants' Br. 44-45, does not support their reading. That history describes Congress's concern with undocumented arrivals who evade inspection or make meritless claims to prolong an

32

unlawful presence -- not with noncitizens who were inspected, vetted, and lawfully paroled through a government-run humanitarian program and later had that status revoked through no fault of their own. If anything, that history cuts against extending a tool aimed at deterring evasion of inspection to noncitizens who did exactly what the law asked of them.

### D. Congress's Use of "Arriving Alien" Elsewhere in Section 1225 Confirms the Different Phrase in the "Arriving In" Provision Was Deliberate

A further textual signal confirms the district court's reading. Congress did not uniformly avoid the regulatory term of art "arriving alien" throughout Section 1225 -- to the contrary, it used that very term in two neighboring subsections of the same statute. Section 1225(a)(2) provides that an "arriving alien who is a stowaway" may not apply for admission and "shall be ordered removed upon inspection," and Section 1225(c)(1) provides that if an officer or judge suspects that "an arriving alien" is inadmissible on security-related grounds, the officer or judge "shall order the alien removed." 8 U.S.C. § 1225(a)(2), (c)(1). Congress therefore demonstrated, within the four corners of the very statute at issue, that it knew how to invoke the defined, status-based regulatory concept of "arriving alien" when it wanted to. Its choice to use the different, present-participial phrase "arriving in the United States" in Section 1225(b)(1)(A)(i) -- the provision Respondents invoke here -- is not attributable to inadvertence.

33

This intra-statutory contrast is exactly the kind of evidence courts treat as most probative of deliberate drafting. Where Congress includes particular language in one section of a statute but omits it in a neighboring section of the same Act, courts presume the omission is intentional. *Russello v. United States,* 464 U.S. 16, 23 (1983); *Dean v. United States*, 556 U.S. 568, 573 (2009). The Sixth Circuit applies the same presumption in this very statutory scheme: "[W]hen Congress deliberately uses different words, [courts] presume those words to 'have different meanings.'" *Lopez-Campos v. Raycraft,* 175 F.4th 713 (6th Cir. 2026) (quoting *Tomaszczuk v. Whitaker,* 909 F.3d 159, 166 (6th Cir. 2018)); accord *Singh v. Rosen,* 984 F.3d 1142 (6th Cir. 2021); *Keeley v. Whitaker,* 910 F.3d 878 (6th Cir. 2018); *Moctezuma-Reyes v. Garland,* 124 F.4th 416 (6th Cir. 2024). Reading "arriving in the United States" as though it meant "arriving alien" would render Congress's choice of different language in Section 1225(b)(1)(A)(i) superfluous -- a result the canon against surplusage forbids. *Lopez-Campos,* 175 F.4th 713.

The term-of-art canon Respondents invoke elsewhere in their brief cuts against them here for the same reason. "[T]he first precondition of any term-of-art reading is that the term be present in the disputed statute." *Borden v. United States*, 593 U.S. 420 (2021); accord *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337 (1991). Because Section 1225(b)(1)(A)(i) does not use the phrase "arriving alien," courts cannot import that term's regulatory definition into the different phrase Congress

34

actually chose. Even the Board of Immigration Appeals has recognized the distinction: other regulatory provisions "explicitly cross-reference the term 'arriving alien,' rather than referring to an alien 'who arrives.'" Congress's use of "arriving" language in related provisions is, moreover, "clearly broader than the historical understanding of 'arriving aliens,'" *Matter of M-D-C-V-*, 28 I. & N. Dec. 18 (BIA 2020); accord *Matter of C-P-Y-*, 29 I. & N. Dec. 610 (BIA 2026) (Congress's substitution of "arrival"/"arrived" for "admission"/"admitted" in some IIRIRA provisions but not others reflects deliberate, not careless, drafting).

Respondents may respond, as the government has argued elsewhere, that the INA is, as this Court has put it in borrowing a phrase originally used to describe a different statute, "far from a chef d'oeuvre of legislative draftsmanship," making it risky to draw strong inferences from terminological variation. *Lopez-Campos*, 175 F.4th 713 (quoting *King v. Burwell*, 576 U.S. 473, 493 (2015)). But that general observation cannot overcome the far more specific and probative evidence here: Congress's choice of two different phrases within the same short provision of the same statute, addressing the same general subject of inadmissible arriving noncitizens. Sister courts applying *Loper Bright's* requirement of independent judicial interpretation have reached the same conclusion post-2025, declining to defer to DHS's regulatory conflation of the two phrases. *Martinez Herrera v.*

35

*Olson*, 2026 WL 561101 (W.D. Ky. 2026); *Patel v. Tindall*, 810 F. Supp. 3d 824 (W.D. Ky. 2025); *Singh v. Olson*, 2026 WL 988505 (E.D. Ky. 2026).

### E. No Deference Beyond *Skidmore* Is Owed to Respondents' Interpretation, and It Does Not Carry the Day

Respondents do not seek *Chevron* deference; they argue their "almost 30-year-old" regulation, contemporaneous with the statute and consistently maintained, is entitled to the "due respect" *Skidmore* affords a coordinate branch's views. Appellants' Br. 36-37 (quoting *Bondi v. VanDerStock*, 145 S. Ct. 857, 874 (2025)).

*Skidmore* weight turns on "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 388 (2024). The regulation's age does not establish consistency of application: DHS applied expedited removal to former parolees only rarely before 2025.

### F. Petitioners Acknowledge a Division of Authority, and the Better-Reasoned Decisions Support Affirmance

Candor requires Petitioners to acknowledge that not every court has agreed with the reading adopted below. A small number of district courts have held that termination of parole returns a noncitizen to the position of an applicant for admission subject to expedited removal, largely on the regulatory-history and entry-fiction theories Respondents advance here. See, e.g., *Zamirov v. Olson*, 2025 WL

2618030, at \*3 (N.D. Ill. Aug. 29, 2025); *Chirinos Chirinos v. Tindell*, 2026 WL 926941 (W.D. Ky. Apr. 6, 2026).

Those decisions are unpersuasive for the reasons already given: they do not separately confront the Designation Provision's present-perfect "has ... been ... paroled" language or the "Arriving In" Provision's present-progressive text, they do not grapple with DHS's own decades of contrary regulatory practice, and they do not address why the corpus-juris and settled-judicial-interpretation canons apply to a term IIRIRA coined in 1996 rather than inherited from pre-existing law. See Section II.B-E, above. By contrast, the district court below and a rapidly growing number of sister courts, applying the same textual tools Petitioners urge here, have reached the opposite conclusion -- including several decisions from district courts within this Circuit decided just in the last few months. See, e.g., *Matkarimov v. Noem*, 2026 WL 700072 (E.D. Ky. Mar. 12, 2026); *Bekzada v. Fields*, 2026 WL 696555 (E.D. Ky. Mar. 12, 2026); *Bahena v. Trump*, 2026 WL 312708 (E.D. Ky. Feb. 5, 2026); *Penott Rodriguez v. Fields*, 2026 WL 1078101 (E.D. Ky. Apr. 21, 2026); *Polanco v. Fields*, 2026 WL 1134862 (E.D. Ky. Apr. 27, 2026); *Angelo Antonio Bellia Castillo v. Sam Olson*, 2026 WL 1894096 (N.D. Ill. July 1, 2026). See Section II.G, below. This Court should follow the better-reasoned line.

**G. *Doe v. Noem* Does Not Compel a Different Result**

Respondents' brief cites *Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025), only once, and only for background facts about the CHNV parole program's terms; Respondents do not rely on its merits holding to defend their reading of Section 1225(b)(1) in this appeal. Appellants' Br. 11. Petitioners nonetheless address it for completeness, because it involves the same parole program and a similar statutory-authority theory. In *Doe*, the First Circuit reversed the district court's grant of preliminary relief and vacated the district court's stay of a CHNV-related termination notice, holding that the plaintiffs there had not demonstrated a strong likelihood of success on that theory. Id. at 278-79, 285; accord *Puentes v. Raycraft*, No. 1:26-cv-193 (W.D. Mich. June 8, 2026) (describing *Doe* in these same terms while affirming a grant of habeas relief and release on a materially identical statutory theory).

*Doe* is neither binding on this Court nor, Petitioners submit, correctly decided, and it has not carried the day elsewhere. Since *Doe* was decided, the district court below and multiple sister courts, presented with the same statutory arguments, have reached the opposite conclusion on fuller records. See, e.g., *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 2938594 (N.D. Ohio Oct. 16, 2025); *Garcia v. Andrews*, 2025 WL 2420068 (E.D. Cal. Aug. 21, 2025); *Salazar v. Kaiser*, 2025 WL 2456232 (E.D. Cal. Aug. 26, 2025); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274

(E.D.N.Y. Nov. 28, 2025); *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48 (D.D.C. Aug. 1, 2025); *Puentes v. Raycraft*, No. 1:26-cv-193 (W.D. Mich. June 8, 2026). These decisions directly engage the same regulatory-history and entry-fiction arguments Respondents press here and explain why the statutory text and structure support the opposite conclusion. This Court should follow that better-reasoned and now-larger body of authority rather than a single out-of-circuit decision that Respondents themselves do not invoke for its holding.

Petitioners are also aware of the Supreme Court's recent decision in *Mullin v. Al Otro Lado*, 609 U.S. ---- (June 25, 2026), which addresses Section 1225(b)(1)(A) (i) in the context of the government's former "metering" practice at ports of entry and non-refoulement obligations under 8 U.S.C. § 1158. *Mullin* does not address, and Petitioners are not aware of any indication that it resolves, whether a noncitizen who was inspected, paroled, and resided in the United States for over a year before parole terminated remains "arriving in the United States." Should Respondents rely on Mullin on reply, Petitioners respectfully submit that its metering/non-refoulement holding is addressed to a materially different factual and legal question than the one presented here.

## III. The District Court Correctly Weighed the Remaining Preliminary-Injunction Factors

### A. Petitioners Face Irreparable Harm Absent Relief

The district court held that unlawful detention and the threat of summary removal without process constitute irreparable harm as a matter of law, and separately found that removal to a country where Petitioners credibly fear persecution compounds that harm irreversibly. That holding follows directly from this Circuit's precedent that "the loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion) (substituting "constitutional" for "First Amendment" in the original, consistent with courts' extension of Elrod's reasoning beyond the First Amendment context). RE 26, PageID #417-18.

Respondents argue that a mere allegation of a constitutional violation cannot itself establish irreparable harm absent a shown likelihood of success on the merits, citing *Hartman v. Acton,* 613 F. Supp. 3d 1015, 1025 (S.D. Ohio 2020). Appellants' Br. 41. They separately attack the district court's persecution/torture-risk finding as unsupported and contrary to the agency's negative credible-fear determinations, citing *Rodriguez-Tovar v. Lynch,* 628 F. App'x 393, 399 (6th Cir. 2015), and *Marqus v. Barr*, 968 F.3d 583, 587 (6th Cir. 2020), for the proposition that generalized fear of crime or violence is insufficient. Appellants' Br. 43-44.

However, Hartman does not help Respondents once the merits premise is addressed: the district court did not rest irreparable harm on a bare, unadjudicated allegation -- it rested on a reasoned likelihood-of-success finding on the statutory authority question addressed in Section II, above, which Hartman's rule expressly permits. 613 F. Supp. 3d at 1025. Respondents' attack on that finding is therefore derivative of their merits argument and rises or falls with it. As to the persecution-risk finding, Rodriguez-Tovar and Marqus addressed the substantive standard for asylum or withholding relief on the merits, not the irreparable-harm inquiry at the preliminary-injunction stage, where a credible, individualized showing of risk -- not a final merits adjudication -- is sufficient. Petitioners' credible-fear records document specific, individualized threats (targeted political violence against E.V.'s family and an attempted kidnapping; gang violence directly experienced by M.F.E.), not the generalized crime concerns Rodriguez-Tovar and Marqus found insufficient in the different, final-merits context those cases addressed. RE 1, PageID #6-9.

**B. The Balance of Equities and the Public Interest Favor Petitioners**

Where the government is the opposing party, the balance-of-equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The district court correctly held both favor Petitioners: the public has a strong interest in agencies operating within the bounds Congress set, and Respondents identified no meaningful harm from affording Petitioners process before removal, particularly given that

41

Respondents ultimately elected to release Petitioners on their own recognizance rather than proceed to a bond hearing. See Section I.D, above; Section IV.C, below. Respondents do not identify any free-standing harm from the injunction independent of the merits and irreparable-harm arguments addressed above; their challenge to the equities and public-interest findings rises or falls with those arguments. An injunction that simply holds Respondents to the statutory scheme Congress enacted does not intrude on executive discretion -- it enforces the boundaries of that discretion.

## IV. The District Court Correctly Held That Petitioners Are Entitled to an Individualized Bond Hearing

### A. Section 1226(a), Not Section 1225(b)(1), Governs Petitioners' Detention, and Section 1226(a) Requires a Bond Hearing

The district court held, in the alternative to its constitutional ruling, that Petitioners' detention is governed by 8 U.S.C. § 1226(a) rather than Section 1225(b)(1), and that Section 1226(a) entitles Petitioners to an individualized bond hearing before an immigration judge. RE 26, PageID #404, 419.

Respondents' primary response is procedural: they argue this Court should vacate and remand rather than reach the bond-hearing question at all, because the district court's bond ruling was predicated entirely on its merits ruling that expedited removal does not apply -- "[i]f the Court finds the Government acted ultra vires . . . its only justification for mandatory detention evaporates." Appellants' Br. 47-48.

42

Respondents argue that if Section 1225(b)(1) does properly apply, detention is mandatory under that provision, with no bond-hearing mechanism, because Section 1182(d)(5)(A)'s parole option is the only release valve Congress provided, and *Jennings v. Rodriguez*, 583 U.S. 281 (2018), forecloses reading an implicit bond-hearing requirement into a mandatory-detention statute. Appellants' Br. 9-10, 40-46.

However, Respondents' procedural argument does not survive Section II, above: because Petitioners are likely to succeed in establishing that Section 1225(b)(1) does not reach them at all, the predicate Respondents identify is satisfied, not undermined -- the bond ruling need not be vacated on that basis. Sections 1225 and 1226 establish mutually exclusive detention regimes keyed to whether a noncitizen is treated as an "applicant for admission" subject to the summary procedures of Section 1225(b)(1), or is instead in ordinary removal proceedings under Section 1229a, in which case Section 1226 governs detention pending those proceedings. See *Martinez Herrera v. Olson*, No. 4:26-cv-52, 2026 WL 561101, at *6-7 (W.D. Ky. 2026). Because Petitioners are not subject to the Designation or "Arriving In" Provisions, they cannot lawfully be held under Section 1225(b)(1)'s no-bond regime, and once Respondents placed Petitioners into regular Section 1229a proceedings, Section 1226(a) -- and its accompanying right to an individualized bond hearing before an immigration judge, see 8 C.F.R. § 1236.1(d) -- necessarily governed. *Jennings* does not hold otherwise: *Jennings* addressed whether Section 1225(b) or

43

Section 1226(c) contains an implicit bond-hearing requirement for noncitizens properly subject to those provisions; it did not address, and does not resolve, the antecedent question presented here -- whether Section 1225(b)(1) applies to Petitioners at all. 583 U.S. at 297-98. Once that antecedent question is resolved in Petitioners' favor, Section 1226(a)'s bond-hearing right follows as a matter of statutory text, independent of any constitutional holding.

Nor can Respondents fall back on Section 1225(b)(2) as an independent, alternative source of mandatory detention authority if Section 1225(b)(1) does not apply. Compare *Cordero Pelico v. Kaiser*, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025) (government conceding noncitizens in full Section 1229a proceedings cannot simultaneously be subject to Section 1225(b)(1) expedited removal, but arguing Section 1225(b)(2) mandatory detention could still apply). Section 1225(b)(2) is, like the "Arriving In" Provision, keyed to a noncitizen who is presently an "applicant for admission" not clearly entitled to be admitted and who has been detained for further inquiry at the time of inspection -- it is the general inspection-detention provision for individuals presently undergoing that process, not a residual detention authority for individuals who completed inspection and parole processing more than a year earlier and are now in ordinary Section 1229a proceedings. This Court has already confirmed as much: a noncitizen who did not affirmatively seek admission at the relevant time is subject to discretionary detention under Section 1226, not

mandatory detention under Section 1225(b)(2)(A). *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026). The same is true of Petitioners here for the same reasons developed in Section II.B, above.

### B. In the Alternative, Due Process Independently Requires a Bond Hearing

Even setting the statutory argument aside, the district court held that the Due Process Clause requires an individualized bond hearing before continued detention, applying the balancing test of Mathews v. Eldridge, 424 U.S. 319 (1976): Petitioners' private interest in freedom from prolonged detention is substantial; the risk of erroneous deprivation is high where detention rests on a legal theory the district court found unlikely to succeed; and Respondents identified no comparable burden in providing individualized review that they do not already provide to similarly situated noncitizens in Section 1226(a) proceedings. RE 26, PageID #419-22.

Respondents argue the credible-fear process Petitioners already received was constitutionally adequate, citing *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and the D.C. Circuit's stay order in *Make the Road New York v. Noem*, No. 25-5320, 2025 WL 3563313, at *21, *29-30 (D.C. Cir. Nov. 22, 2025), and that no further process, including a bond hearing, is constitutionally required. Appellants' Br. 42 n.5, 45-46.

However, *Thuraissigiam* and *Make the Road New York* address the process due in adjudicating a credible-fear claim under a statute Congress validly applied to the noncitizens in those cases; neither addresses whether Congress validly applied Section 1225(b)(1) to Petitioners in the first place, which is the question Section II, *supra*, resolves in Petitioners' favor. This Court has already declined to let Respondents use *Thuraissigiam* this way: where the government has "mischaracterize[d] the basis of [a habeas p]etitioners' due process claims" as limited to the process Congress provided for credible-fear review, and the petitioners in fact argued that detention without bond independently deprived them of liberty without due process of law, this Court held that *Thuraissigiam* does not resolve that separate claim. *Lopez-Campos v. Raycraft,* 175 F.4th 713 (6th Cir. 2026). Where, as here, that threshold authority is itself in genuine doubt, continued detention without any individualized review of flight risk or danger presents precisely the risk of erroneous, unreviewable deprivation that due process is designed to prevent. See *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001) ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").

### C. The Bond-Hearing Question Is Not Moot, and Respondents' Own Brief Misstates What Happened

Respondents' brief states, in its factual and procedural history section, that Petitioners were "given bond hearings and released from custody on November 14,

2025." Appellants' Br. 17. Respondents do not argue mootness anywhere in their brief.

Respondents' own characterization of the record is incorrect. Respondents themselves filed a notice below titled "Notice of Petitioners' Release," confirming that Petitioners were released on their own recognizance without ever having been afforded the individualized bond hearing the district court ordered. RE 27. The district court's November 7, 2025 order gave Respondents a choice -- provide a bond hearing or release Petitioners under conditions of supervision -- and Respondents chose release, not a hearing. RE 26, PageID #404; RE 27.

Because Respondents have never conceded, and continue to dispute, that Petitioners were entitled to a bond hearing, and because Petitioners' Section 1229a proceedings remain pending, there is a reasonable expectation that Respondents will subject these same Petitioners to the same action again: Respondents remain free to redetain Petitioners at any time during their pending removal proceedings and, on their own reading of the statute, to again invoke Section 1225(b)(1)'s no-bond regime without a hearing. That combination -- a controversy too short in duration to be fully litigated before the challenged action ceased, coupled with a reasonable expectation that the same complaining parties will be subjected to the same action again -- satisfies the "capable of repetition, yet evading review" exception to mootness. *Turner v. Rogers,* 564 U.S. 431, 440 (2011). The same conclusion follows

47

independently under the voluntary-cessation doctrine: Respondents avoided a final adjudication of Petitioners' entitlement to a bond hearing only by voluntarily releasing them on the eve of the deadline the district court set, and Respondents have offered no assurance that the challenged practice -- detaining former CHNV parolees without an individualized bond hearing -- will not recur. Even a future re-detention without an individualized hearing would itself present the same constitutional and statutory questions this appeal presents. See *Colina-Rojas v. Noem*, 2026 WL 412138, at *4 (W.D. Ky. Feb. 13, 2026) (re-detention without an individualized assessment requires a bond hearing before a neutral immigration judge). This same legal question also recurs across materially similar cases nationwide, reinforcing that it is not moot.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's order granting Petitioners' motion for a preliminary injunction and partial habeas relief.

Respectfully submitted,

/s/ Brian J. Hoffman

Brian J. Hoffman, Esq.
OCSILiO
P.O. Box 181247
Cleveland Heights, OH 44118
(330) 539-3932
brian@ocsilio.org
*Pro bono Counsel for Petitioners-Appellees*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)

(7)(B) and 6 Cir. R. 32(b) because, excluding the parts of the brief exempted by Fed.

R. App. P. 32(f) and 6 Cir. R. 32(b)(1), this brief contains 8357 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)

(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has

been prepared in a proportionally spaced typeface using Microsoft Word in 14-point

Times New Roman.

/s/ Brian J. Hoffman

Brian J. Hoffman, Esq.
Counsel for Petitioners-Appellees

49

## CERTIFICATE OF SERVICE

I certify that on July 6, 2026, this brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system, which will send notice of this filing to all counsel of record who are registered CM/ECF users.

/s/ Brian J. Hoffman

Brian J. Hoffman, Esq.
Counsel for Petitioners-Appellees

## ADDENDUM A

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to 6 Cir. R. 28(b)(1)(A)(i) and 30(g)(1), Petitioners-Appellees designate the following documents from the record of the United States District Court for the Northern District of Ohio, No. 4:25-cv-02069:

| RE | Description | PageID # Range |
|---|---|---|
| RE 1 | Petition for Writ of Habeas Corpus (filed Sept. 29, 2025) | PageID #1-21 |
| RE 12 | Respondents' Opposition to TRO and Motion to Dismiss (filed Oct. 14, 2025) | PageID #213 et seq. |
| RE 15-16 | Order Granting Temporary Restraining Order (Oct. 16, 2025) | PageID #340-359 |
| RE 20 | Respondents' Opposition to Motion for Preliminary Injunction (filed Oct. 27, 2025) | PageID #364 et seq. |
| RE 24 | Joint Factual Stipulations (filed Oct. 29, 2025) | PageID #401-402 |
| RE 26 | Memorandum of Opinion and Order Granting Preliminary Injunction and Habeas Petition in Part (Nov. 7, 2025) | PageID #404 et seq. |
| RE 27 | Notice of Petitioners' Release Filed by All Defendants (Nov. 17, 2025) | PageID # 429 |
| RE 29 | Judgment (Nov. 25, 2025) | PageID # 431 |
| RE 30 | Notice of Appeal (Jan. 6, 2026) | PageID # 432 - 433 |

**ADDENDUM B**

**TEXT OF RELEVANT STATUTORY AND REGULATORY PROVISIONS**

8 U.S.C. § 1225(b)(1)(A) (excerpt):

"(i) In general. If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

...

(iii) Application to certain other aliens.-- (I) In general. Subject to a limitation under subclause (II), the Secretary of Homeland Security may apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Secretary. Upon making a determination under this subparagraph, the Secretary shall publish notice of the designation on the public docket... (II) Aliens described. An alien described in this clause is an alien who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility."

8 C.F.R. § 235.3(b)(6) (excerpt):

"If the examining immigration officer determines that an alien arriving in the United States, or an alien present in the United States who has not been admitted or paroled, is inadmissible under section 212(a)(6)(C) or 212(a)(7) of the Act, and the alien has not been designated by the Secretary of Homeland Security to be an alien to whom expedited removal procedures set out in section 235(b)(1) of the Act do not apply, the examining immigration officer shall order the alien removed from the United States."

8 C.F.R. § 235.3(b)(1) (as amended 2006, 71 Fed. Reg. 27,585 (May 12, 2006)) (excerpt, quoted by Respondents, Appellants' Br. 6):

"...an arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, before or after the issuance of a notice to appear ... and even after any such parole is terminated or revoked."

8 C.F.R. § 212.5(e)(2)(i) (excerpt, quoted by Respondents, Appellants' Br. 37-38):

"...if the district director determines that the alien is not eligible for parole ... further inspection or hearing shall be conducted under section 235 or 240 of the Act."

8 U.S.C. § 1182(d)(5)(A) (full text):

"The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

8 U.S.C. § 1225(a)(1) (definition of "applicant for admission"):

54

"An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission."

8 U.S.C. § 1226(a) (excerpt):

"On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General -- (1) may continue to detain the arrested alien; and (2) may release the alien on ... bond ... or conditional parole ...."