No. 26-3015

# IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

E.V., M.F.E.,

*Petitioners-Appellees*,

v.

KEVIN RAYCRAFT, ET AL., DIRECTOR OF THE DETROIT FIELD OFFICE FOR U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ET AL.,

*Respondents-Appellants.*

On Appeal from the U.S. District Court
for the Northern District of Ohio
No. 4:25-cv-2069 (Pearson, J.)

# REPLY BRIEF FOR RESPONDENTS-APPELLANTS


PAPU SANDHU
*Assistant Director*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

BRETT A. SHUMATE
*Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
TYLER J. BECKER
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

## TABLE OF CONTENTS


INTRODUCTION ........ 1

ARGUMENT ........ 3

I. The Government Is Likely to Succeed on the Merits ........ 3

A. Petitioners Have Failed to Persuasively Explain how the District Court had Jurisdiction in the Face of Multiple Jurisdictional Bars ........ 3

1. Petitioners' Argument Conflicts with the Text, Structure and Purpose of 8 U.S.C. §§1252(a)(2)(A) & (e) ........ 6

a. Text ........ 6

b. Statutory Structure ........ 8

c. Legislative Purpose ........ 11

2. Sections 1252(g) and (b)(9) Also Preclude Review of Petitioners' Claims ........ 13

B. Petitioners are Subject to Expedited Removal as Aliens "Arriving in" the United States ........ 20

II. The Remaining Equitable Factors Tip Heavily in the Government's Favor ........ 30

III. Petitioners Provide no Reason Why the Court Should not Vacate the District Court's Detention Holding and Remand if the Government Prevails on Jurisdiction or the Merits ........ 32

CONCLUSION ........ 33

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

## CASES

*Alvarez v. ICE*,
818 F.3d 1194 (11th Cir. 2016) ........ 17

*Am. Immigr. Lawyers Ass'n v. Reno*,
(*AILA*), 199 F.3d 1352 (D.C. Cir. 2000) ........ 12, 13

*Am. Paper Inst. Inc. v. Am. Elec. Power Serv. Corp.*,
461 U.S. 402, 421 (1983) ........ 2

*Blanche v. Lau*,
609 U.S. ---, 2026 WL 1791339 (June 23, 2026) ........ 22

*Brumme v. INS*,
275 F.3d 443 (5th Cir. 2001) ........ 11

*Camarena v. Dir., ICE*,
988 F.3d 1268 (11th Cir. 2021) ........ 15

*Carlson v. Landon*,
342 U.S. 524 (1952) ........ 17

*Castro v. United States Dep't of Homeland Sec.*,
835 F.3d 422 (3d Cir. 2016) ........ 11

*Cordon-Linarez v. Garland*,
No. 3:24-cv-00488, 2024 WL 4652824 (M.D. Pa. 2024) ........ 29

*Corrales-Gonzalez v. Emmerich*,
No. 24-CV-638-WMC, 2025 WL 1638423 (W.D. Wis. 2025) ........ 29

*Department of Homeland Security v. Thuraissigiam*,
591 U.S. 103 (2020) ........ 23, 31

*Doe v. Noem*,
152 F.4th 272 (1st Cir. 2025) ........................................................ 21

*Duarte v. Mayorkas*,
27 F.4th 1044 (5th Cir. 2022) ................................................... 22, 23

*E.F.L. v. Prim*,
986 F.3d 959 (7th Cir. 2021) ........................................................ 15

*Elgharib v. Napolitano*,
600 F.3d 597 (6th Cir. 2010) ........................................................ 17

*Enbridge Energy, LP v. Nessel,*
146 S. Ct. 1074 (2026) ........................................................ 9, 10, 12

*Garcia v. Att'y Gen. of U.S.*,
553 F.3d 724 (3d Cir. 2009) ......................................................... 15

*Hamama v. Adducci*,
912 F.3d 869 (6th Cir. 2018) ................................... 1, 5, 16, 17, 18

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ..................................................................... 18

*Khan v. Holder*,
608 F.3d 325 (7th Cir. 2010) ........................................................ 11

*Leng May Ma v. Barber*,
357 U.S. 185 (1958) ................................................................ 22, 24

*Mahdawi v. Trump*,
--- F.4th ---, 2026 WL 2090981 (2d Cir. July 21, 2026) ...................... 18

*Make the Rd. N.Y. v. Mullin*,
179 F.4th 16 (D.C. Cir. 2026) ....................................................... 30

*Make the Rd. N.Y. v. Noem*,
No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025) ........... 27, 28

*Make the Road New York*,
805 F. Supp. 3d 139 (D.D.C. 2025) .......... 30

*Mantena v. Johnson*,
809 F.3d 721 (2d Cir. 2015) .......... 7

*Matter of E-R-M- & L-R-M-,*
25 I. & N. Dec. 520 (BIA 2011) .......... 13

*Mendoza-Linares v. Garland*,
51 F.4th 1146 (9th Cir. 2022) .......... 6

*M.M.V. v. Garland*,
1 F.4th 1100 (D.C. Cir. 2021) .......... 7, 13

*Mullin v. Doe*,
609 U.S. ___, 2026 WL 1825840 (U.S. June 25, 2026) .......... 6, 8

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 30, 32

*Obregon-Calcedo v. Thompson*,
No. 25-1048, 2025 WL 1805464 (D.N.J. 2025) .......... 29

*Patel v. Garland*,
596 U.S. 328 (2022) .......... 8, 15

*Regents of the Univ. of California*,
591 U.S. 1 (2020) .......... 14

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) .......... 13, 14

*Shunaula v. Holder*,
732 F.3d 143 (2d Cir. 2013) .......... 11

*Silva v. United States*,
866 F.3d 938 (8th Cir. 2017)....................................................................15

*Tazu v. Att'y Gen.*,
975 F.3d 292 (3d Cir. 2020) .....................................................................17

*United States v. Arredondo-Martinez,*
492 F. App'x 823 (9th Cir. 2012)..................................................25, 29

**STATUTES**

**Immigration and Nationality Act of 1952, as amended:**

8 U.S.C. §1182(d)(5)(A)...........................................................................22

8 U.S.C. §1225(a)(1).................................................................................21

8 U.S.C. §1225(a)(2).................................................................................25

8 U.S.C. §1225(b)(1)................................................................ 2, *passim*

8 U.S.C. §1225(b)(2).................................................................................33

8 U.S.C. §1252(b)(9)............................................................ 2, 3, *passim*

8 U.S.C. §1226(a)(1994)............................................................................24

8 U.S.C. §1229a ........................................................................................13

8 U.S.C. §1252(a)(1).................................................................................10

8 U.S.C. §1252(a)(2)(A)........................................................ 1, 2, 3, *passim*

8 U.S.C. §1252(a)(2)(D) ............................................................................10

8 U.S.C. §1252(e) ..................................................................... 1, 3, 11

8 U.S.C. §1252(e)(2) .......... 5, 9

8 U.S.C. §1252(e)(3)(A) .......... 4, 5, 9, 10, 12

8 U.S.C. §1252(e)(3)(C) .......... 12

8 U.S.C. §1252(e)(3)(D) .......... 12

8 U.S.C. §1252(e)(5) .......... 11

8 U.S.C. §1252(g) .......... 2, 3, 14

8 U.S.C. §1254a(b)(5)(A) .......... 8

28 U.S.C. §2241 .......... 6, 16

**REGULATIONS**

8 C.F.R. §1.2 .......... 9, 20, 23

8 C.F.R. §208.30(e)(2) .......... 31

8 C.F.R. §212.5(e)(2)(i) .......... 27

8 C.F.R. §235.3 .......... 9, 20

**OTHER AUTHORITIES**

*Designating Aliens for Expedited Removal*, 84 Fed. Reg. 35409 (July 23, 2019) .......... 28

*Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13611 (Mar. 25, 2025) .......... 27, 29

## INTRODUCTION

Under Congress's comprehensive scheme precluding review of most matters relating to expedited removal, the district court lacked jurisdiction to review Petitioners' claim challenging their expedited removal orders. 8 U.S.C. §§1252(a)(2)(A). While Congress did provide for "limited habeas review of expedited removal orders," *Hamama v. Adduci*, 912 F.3d 869, 874 n.6 (6th Cir. 2018) (citation omitted), it limited such challenges to only whether petitioners are citizens, lawful permanent residents, or refugees, and whether expedited removal orders have been entered against them. 8 U.S.C. §§1252(e)(2)(A)-(C). Petitioners here do not claim to fall within any of these exceptions. The district court therefore lacked jurisdiction over Petitioners' habeas claims under the plain language of §§1252(a)(2)(A), (e)(2).

Petitioners' sole argument in support of jurisdiction—that habeas review remains available for "antecedent" legal issues—is contrary to the text, structure, and purpose of the expedited removal statute. In particular, the fact that Congress provided specific, narrow exceptions to the jurisdictional bars, *see* 8 U.S.C. §1252(e), but did not carve out the generic, open-ended exception Petitioners propose, provides strong

evidence in favor of the Government. Indeed, Petitioners' proposed exception would render §1252(a)(2)(A)'s jurisdictional bar largely inoperative, violating the basic canon that Congress does not "paralyze with one hand what it sought to promote with the other." *Am. Paper Inst. Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 421 (1983).

In any event, two other jurisdictional provisions barred the district court from reviewing Petitioners' challenges to certain aspects of the removal process, including the Department of Homeland Security's (DHS's) decision to apply expedited removal. 8 U.S.C. §§1252(g), (b)(9).

Further, the Government is likely to succeed on its merits arguments that the district court incorrectly interpreted the expedited removal statute's "Arriving in" Provision at 8 U.S.C. §1225(b)(1)(A)(i) to exempt aliens paroled at ports of entry. Nothing in Petitioners' brief demonstrates otherwise. Petitioners fail to engage with, much less rebut, the Government's arguments based on the "entry fiction" doctrine—a critical background principle in interpreting the term "Arriving in." They also do not explain why or how Congress—by using that term—changed its decades-long approach in which paroled arriving aliens were given

fewer procedural rights regarding their removal because they were considered to be standing at the border for legal purposes.

In addition to failing to show a likelihood of success on the merits, none of Petitioners' arguments as to irreparable harm support the district court's erroneous finding regarding that factor. And the other equitable factors also tip in the Government's favor. Accordingly, the Court should reverse the preliminary injunction.

Finally, if the Court reverses on either jurisdiction or the merits of expedited removal, it should vacate the district court's detention ruling and remand for further proceedings consistent with the Court's opinion.

## ARGUMENT

### I. The Government Is Likely to Succeed on the Merits.

#### A. Petitioners Have Failed to Persuasively Explain how the District Court had Jurisdiction in the Teeth of Multiple Jurisdictional Bars.

Several jurisdictional bars preclude the district court from reviewing Petitioners' claims. 8 U.S.C. §§1252(a)(2)(A), (b)(9), (g), and (e). Any one of them would suffice here.

In particular, 8 U.S.C. §1252(a)(2)(A), entitled "Review relating to section 1225(b)(1)," contains four jurisdictional bars that prelude review

of virtually all issues related to expedited removal. Gov't Opening Brief ("Gov't.Br.") 20-23. These jurisdictional bars preclude judicial review of (i) claims "arising from or relating to the implementation or operation of an [expedited removal] order," (ii) the "decision … to invoke" expedited removal, (iii) the "application of" expedited removal to "individual aliens," and (iv) "procedures and policies … to implement" the expedited removal statute. 8 U.S.C. §1252(a)(2)(A)(i)-(iv). Petitioners' claims fall under *all four* bars. Gov't.Br.20-23.

While Petitioners can never challenge judicially the "application of" expedited removal to "individual alien[s]," the other three jurisdictional bars have two exceptions that allow Petitioners to bring certain challenges. *First*, Petitioners can bring challenges to the "Validity of the System," that is whether the expedited removal statute or regulations issued to implement expedited removal are constitutional, or challenges to the legal validity of "regulation[s], "written policy directive[s]," "written policy guidelines," or "written procedure[s]" to "implement" expedited removal. 8 U.S.C. §1252(e)(3)(A). But such challenges must be brought in federal court in the District of Columbia not later than sixty days after such statute, regulation, policy, or procedure is "first

implemented." *Id.*, §1252(e)(3)(A)-(B). Petitioners' claims, which were filed in the Northern District of Ohio and challenge decades-old DHS regulations obviously do not qualify. Gov't.Br.24-25. *Second*, Congress provided for "limited habeas review of expedited removal orders." *Hamama*, 912 F.3d at 874 n.6 (citation omitted). But such habeas challenges are limited to only whether petitioners are citizens, lawful permanent residents, or refugees, and whether expedited removal orders have been entered against them. 8 U.S.C. §§1252(e)(2); Gov't.Br.23-24. Petitioners do not assert that their claims involve any of those habeas exceptions. Petitioners' Brief ("Pet.Br.") 20-22.

Petitioners' response to these jurisdictional bars is that Congress preserved habeas review for any "antecedent legal question" relating to expedited removal. Pet.Br.16-17, 20, 24. Petitioners contend that §1252(a)(2)(A)'s bar and limited exceptions "presupposes that Section 1225(b)(1) validly applies to the noncitizen in question in the first place." *See* Pet.Br.21. But that result flouts the text, structure and purposes of the expedited removal statute.

### 1. Petitioners' Argument Conflicts with the Text, Structure and Purpose of 8 U.S.C. §§1252(a)(2)(A) & (e).

***a. Text***: Petitioners provide no textual or other authority to support their argument and the language of §1252(a)(2)(A) provides no hint of the exception Petitioners propose. *See Mullin v. Doe*, 609 U.S. ___, 2026 WL 1825840, at *8 (U.S. June 25, 2026) (rejecting a limited application of INA jurisdictional bar where that limitation "finds no support in the language" of the bar). In fact, §1252(a)(2)(A) applies broadly "[n]otwithstanding any other provision of law," including the habeas statute at 28 U.S.C. §2241, and "cover[s] every aspect of the expedited removal process." *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1154 (9th Cir. 2022). "Congress could scarcely have been more comprehensive in its articulation of the general prohibition on judicial review of expedited removal orders." *Id.* at 1155. Here, Petitioners' challenge to their expedited removal orders clearly falls within the broad parameters of the jurisdictional bars in subsections §1252(a)(2)(A) (i)-(iv) and nothing in the language of those bars requires a court to first determine the validity of the merits question. *See* Gov't.Br.20-23; such a conclusion would render the jurisdictional bar a nullity.

The D.C. Circuit has rejected the same argument Petitioners make here. In *M.M.V. v. Garland*, 1 F.4th 1100 (D.C. Cir. 2021), the plaintiffs argued that that their challenge to certain regulatory credible-fear policies fell "outside section 1252(a)(2)(A)(iv) because they were not lawfully adopted." *Id.* at 1107. The D.C. Circuit had little trouble dispensing with that contention, explaining that "section 1252(a)(2)(A)(iv) requires only that the disputed policies be 'adopted'" and the "bar on judicial review of certain 'policies adopted' would be ineffective if 'adopted' were construed to mean 'lawfully adopted' as determined by a reviewing court." *Id.* (quoting §1252(a)(2)(A)(iv)).

Unlike the on-point decision in *M.M.V.*, Petitioners rely on cases in a completely different context that do not involve §1252(a)(2)(A) or expedited removal. Pet.Br.21. Those cases, which considered the application of the discretionary review bar at 8 U.S.C. §1252(a)(2)(B)(ii), turned on the distinction between a substantive and procedural challenge to the revocation of an immigration petition—a distinction Petitioners do not advance here. *See, e.g.*, *Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015).

Additionally, it is unclear whether this distinction even survives in light of two subsequent Supreme Court decisions. In *Mullin*, 2026 WL 1825840, the Court recently interpreted another INA jurisdictional bar and rejected the substance/procedure distinction after finding "no support" for that distinction in the language of the bar at 8 U.S.C. §1254a(b)(5)(A) because the term "'determination' may concern procedural or substantive questions." *Id.* at *8. Additionally, in *Patel v. Garland*, 596 U.S. 328, 337-47 (2022), the Court interpreted the term "judgment" in §1252(a)(2)(B)(i)—the companion provision to the one at issue in the cases Petitioners rely on—quite broadly to conclude that the jurisdictional bar applied not only to discretionary determinations but non-discretionary ones as well.

**b. *Statutory Structure***: The structure of §§1252(a)(2)(A) & (e) further refutes Petitioners' claim of an "antecedent legal question" exception by demonstrating that Congress provided specific narrow exceptions to the jurisdictional bar but *did not* carve out the exception Petitioners propose. As the Supreme Court has recognized, "an explicit listing of exceptions, set forth in a detailed manner, strongly indicates that Congress did not intend courts to read other unmentioned, open-

ended, equitable exceptions into the statute that it wrote." *Enbridge Energy, LP v. Nessel on behalf of Michigan*, 146 S. Ct. 1074, 1082 (2026) (cleaned up). In three of the four review bars at §1252(a)(2)(A), Congress provided certain exceptions by referencing §1252(e). *See* 8 U.S.C. §1252(e)(2)(A)(i)-(ii), (iv). But none of these exceptions authorizes generic review of "legal questions." 8 U.S.C. §§1252(e)(2), (e)(3); *see* Gov't.Br.23-25 (discussing exceptions).

Additionally, a careful review of the statutory exceptions confirms Congress did not intend to preserve review for a broad category of legal challenges. In particular, Congress carved out a narrow exception for legal challenges to the "Validity of the System," including whether the challenged statutes or regulations issued to implement expedited removal "are constitutional" or such regulations are in violation of the law. 8 U.S.C. §1252(e)(3)(A). This exception permits review of the statutory question presented here—whether the regulations at 8 C.F.R. §§1.2 and 235.3 authorizing expedited removal of aliens paroled at ports of entry are consistent with the "Arriving in" Provision.[1] But Petitioners

[1] Thus, Petitioners are incorrect in asserting that under the Government's position "no court could ever decide whether Section (continued . . .)

do not claim to fall within this exception. And for good reason—such claims may be raised only in the District Court for the District of Columbia filed "no later than 60 days" after the challenged rule or agency action "is first implemented." 8 U.S.C. §1252(e)(3)(A) & (B) (emphasis added). The fact that Congress provided a narrower exception for certain legal challenges with temporal and venue limits strongly suggests it did not intend to provide the universal legal-question exception Petitioners posit.[2] *See Enbridge,* 146 S. Ct. at 1082.

Not only did Congress *not* provide a generic exception for threshold legal questions, it further clarified that such an exception is *not* available for review of expedited removal orders. In the exception at §1252(e)(2)(B), Congress preserved jurisdiction over the question of "whether the

---

1225(b)(1) applies to a category of people at all." *See* Pet.Br.21. Relatedly, they wrongly suggest §1252(e)(3) governs only "pre-enforcement challenges" and not "as-applied" challenges. *Id.* at 22. Nothing in the language of §1252(e)(3) imposes such a restriction.

[2] Congress's narrow exception for systemic legal challenges set forth at §1252(e)(3) stands in stark contrast to its broad exception for "constitutional claims and questions of law" raised in petitions for review of final orders of removal under 8 U.S.C. §1252(a)(1) where a jurisdictional bar would otherwise apply to preclude such claims. *See* 8 U.S.C. §1252(a)(2)(D). Congress thus certainly knew how it could create such an exception for expedited removal orders. But it chose not to do so.

petitioner was ordered removed" under the expedited removal statute. Critically, Congress clarified at §1252(e)(5) that, in interpreting this exception, "the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner." "There shall be *no review* of whether the alien is actually inadmissible or entitled to any relief from removal." 8 U.S.C. §1252(e)(5) (emphasis added). Thus, Congress's intent is plain: aliens may not challenge the *merits* of the expedited removal order—including the legal question of whether expedited removal applies to aliens paroled at ports of entry—outside of the narrow, enumerated exceptions it carved out in §1252(e).[3]

**c. *Legislative Purpose***: Finally, Petitioners' proposed exception (untethered from any language in the statute) would frustrate Congress's goal of expediting the removal of aliens who clearly have no right to remain in the country by allowing them to raise a smorgasbord of open-ended legal challenges which would hamper DHS's enforcement efforts.

---

[3] *See*, *e.g.*, *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 431 (3d Cir. 2016); *Khan v. Holder*, 608 F.3d 325, 330 (7th Cir. 2010); *Brumme v. INS*, 275 F.3d 443, 447 (5th Cir. 2001); *see also Shunaula v. Holder*, 732 F.3d 143, 145–47 (2d Cir. 2013).

There is a reason Congress channeled legal challenges to the validity of the system to the D.C. District Court and imposed a strict deadline for raising such claims. 8 U.S.C. §1252(e)(3)(A) & (B). Congress sought "to cabin judicial review and to have the validity of the new law decided promptly." *Am. Immigr. Lawyers Ass'n v. Reno* (*AILA*), 199 F.3d 1352, 1364 (D.C. Cir. 2000). Consistent with this goal, Congress also reduced the normal 60-day deadline for appeals of district court decisions by requiring that an appeal of "an order issued by the District Court under [§1252(e)(3)] be filed not later than 30 days after the date of issuance of such order." 8 U.S.C. §1252(e)(3)(C) (emphasis added). And, it stated that "[i]t shall be the duty of the District Court, the Court of Appeals, and the Supreme Court of the United States to advance on the docket and to *expedite to the greatest possible extent* the disposition of any case considered under [§1252(e)(3)]." 8 U.S.C. §1252(e)(3)(D) (emphasis added). "This highly detailed scheme matters" because it evidences Congress's goal of finality in resolving challenges to the validity of the system "promptly" and is contrary to Petitioners' theory of an open-ended exception for legal claims. *See Enbridge*, 146 S. Ct. at 1083; *AILA II*, 199 F.3d at 1364.

Finally, Petitioners' inability to explain how their position does not render §1252(a)(2)(A) "ineffective" presents the final nail in the coffin. *See M.M.V.*, 1 F.4th at 1106. They surmise §1252(a)(2)(A) still "protects discretionary implementation of an authorized order." Pet.Br.22. Although unclear, if Petitioners mean it protects only the Secretary's enforcement discretion, they do not anchor their position to anything in the text. Moreover, if that were the purpose of §1252(a)(2)(A), then Congress accomplished nothing because the Secretary's enforcement discretion was well-established apart from §1252(a)(2)(A). *See Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 521–24 (BIA 2011); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485-87 & n.9 (1999) ("*AADC*").

#### 2. Sections 1252(g) and (b)(9) Also Preclude Review of Petitioners' Claims.

a. Petitioners do not dispute they asked the district court to "order" DHS to place them "in regular removal proceedings under 8 U.S.C. §1229a." Habeas Petition ("Pet."), RE 1, PageID #17. Therefore, it is undisputed they challenge DHS's "decision or action … to commence" expedited removal proceedings instead of proceedings before Immigration Judges pursuant to 8 U.S.C. §1229a. 8 U.S.C. §1252(g).

Petitioners' arguments against §1252(g)'s application are unpersuasive. They contend the Supreme Court rejected a "broad reading" of §1252(g). Pet.Br.23 (citing *AADC*, 525 U.S. 471). True but irrelevant. Section 1252(g) plainly applies here because Petitioners' challenge squarely implicates one of the "three discrete actions" that §1252(g) reaches, i.e., the Secretary's choice to "commence" a specific type of removal proceeding. *Id*. at 482. Petitioners' further citation to *DHS v. Regents of the Univ. of California*, 591 U.S. 1 (2020) (Pet.Br.23), is inapposite because that case did not involve one of these three discrete actions. As the Supreme Court explained, DHS's revocation of a "deferred action program [], is not a decision to 'commence proceedings,' much less to 'adjudicate' a case or 'execute' a removal order." *Id.* at 19. Using Petitioners' own language, unlike the "enforcement-adjacent" action in *Regents* (Pet.Br.24), Petitioners directly challenge DHS's commencement of expedited removal proceedings here.

Nor can Petitioners claim that habeas review survives because they are challenging the legal question of DHS's authority to issue expedited removal orders rather than its discretionary decision to commence a proceeding. *See* Pet.Br.24. That argument "runs headlong into § 1252(g)."

*Camarena v. Dir., ICE*, 988 F.3d 1268, 1273 (11th Cir. 2021). As the Eleventh Circuit ruled in *Camarena*, §1252(g) bars review over "any" challenge to the execution of a removal order "and makes no exception for those claiming to challenge the government's 'authority' to execute their removal orders." *Id.* at 1273; *see Patel*, 596 U.S. at 338 ("the word 'any' has an expansive meaning") (cleaned up). "The bottom line is that § 1252(g) strips [district courts] of jurisdiction to hear the claims … and that statute does not offer any discretion-versus-authority distinction of the sort [Petitioners] claim." *Id.*; *E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021) (§1252(g) precludes challenges to DHS's "legal authority" to "execute removal orders … Otherwise, § 1252(g) would be a paper tiger"); *see also Silva v. United St*ates, 866 F.3d 938, 941 (8th Cir. 2017) (applying §1252(g) to find no jurisdiction over tort claims stemming from mistaken execution of a removal order); *but see Garcia v. Att'y Gen. of U.S.*, 553 F.3d 724, 729 (3d Cir. 2009) (holding §1252(g) did not preclude review where alien was challenging the Government's "very *authority* to commence [] proceedings") (emphasis in original).

b. Section 1252(g) also precludes Petitioners' request that the district court "[e]njoin Respondents from transferring Petitioners from

the jurisdiction of this District." Pet., RE 1, PageID #17. "Under a plain reading of the text" of §1252(g), this request falls directly under the Secretary's "decision or action" "to execute removal orders and is not subject to judicial review." *Hamama*, 912 F.3d 874. In an analogous situation, this Court held in *Hamama* that §1252(g) precluded district courts from enjoining the removal of Iraqi nationals with long-standing removal orders. *Id.*

Section 1252(b)(9) likewise precludes review of DHS' decision to remove Petitioners. That statute contains an independent bar precluding district-court review by providing that, apart from a petition for review filed directly with the courts of appeals, "no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, … to review" questions "*arising from any action taken or proceeding brought to remove an alien from the United States*." 8 U.S.C. §1252(b)(9) (emphasis added). Here, Petitioners' challenge "aris[es]" from DHS's "action" "to remove" them, *see* Pet., RE 1, PageID #17; TRO Motion, RE 8, PageID #166, and therefore §1252(b)(9) applies.

c. Further, both §1252(g) and (b)(9) preclude review of Petitioners' custody challenges because DHS's detention of Petitioners is closely tied

to their efforts to remove them, i.e., to "execute [their] removal orders." *See Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of [the] deportation procedure."); *Tazu v. Att'y Gen.*, 975 F.3d 292, 298–99 (3d Cir. 2020) (applying §1252(g) and concluding that Tazu's challenge to his re-detention "attacks a key part of executing his removal order") (cleaned up); *see also Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("securing an alien while awaiting [his removal hearing] constitutes an action taken to commence proceedings" under §1252(g)) (internal citation omitted).

Petitioners contend this Court has "recognized that detention-based claims are jurisdictionally distinct from claims attacking the commencement of removal proceedings." Pet.Br.25 (citing *Hamama* and *Elgharib v. Napolitano*, 600 F.3d 597 (6th Cir. 2010)). They further argue that detention "beyond the immediate removal determination" is too "indirect" to trigger §1252(b)(9). Pet.Br.26. Petitioners are wrong on both fronts.

First, in *Hamama*, the Court "agree[d] the district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims." 912 F.3d at 877. But that

case raised a prolonged detention claim of "six months or more" which is not presented here.[4] *Id.* at 879. Further, unlike *Hamama*, Petitioners' removal and detention claims are inextricably intertwined because they both turn on the question of whether Petitioners are subject to expedited removal. Perhaps more importantly, Petitioners' detention was directly tied to DHS's removal effort and therefore implicates both §1252(g) and (b)(9). A review of the facts illustrates this point.

DHS detained Petitioners on July 29, 2025 and placed them in expedited removal proceedings. *See* Order Granting PI ("Order"), RE 26, PageID #406. As required by law, Petitioners were referred for credible fear interviews upon expressing claims of fear if removed to Haiti. *Id.*, PageID #406-07; *see also* 8 U.S.C. §1225(b)(1)(A)(ii). E.V.'s credible fear proceedings concluded on September 11, 2025, after an IJ affirmed the asylum officer's negative credible fear finding. IJ Order, RE 12-5 (Ex. E), PageID #239-40. But E.V.'s counsel then filed a motion to reopen with

---

[4] For similar reasons, *Jennings v. Rodriguez*, 583 U.S. 281 (2018), is not to the contrary. That case involved aliens detained during immigration proceedings for more than six months without a bond hearing. *Id.* at 290-91; *see also Mahdawi v. Trump*, --- F.4th ---, 2026 WL 2090981, at *8 (2d Cir. July 21, 2026) (distinguishing *Jennings* on similar ground in applying §1252(b)(9)).

the IJ, who denied the motion on September 23, 2025. IJ Order, RE 12-7 (Ex. G), PageID #286-87. With the administrative process complete, DHS apparently began preparations to remove E.V. on September 23, 2025, but did not end up removing her for an "unknown reason." *See* Petitioners' TRO Request, RE 8, PageID #175. Petitioners then filed their habeas petition on September 29, 2025 and the district court enjoined removal on October 16, 2025. With regard to M.F.E., the IJ affirmed the asylum officer's negative credible fear finding on October 2, 2025. IJ Order, RE 12-12 (Ex. L), PageID #295-96.

The point is that DHS's detention of Petitioners was essential to its efforts to "execute" their removal orders. DHS acted with dispatch in issuing expedited removal orders, implementing credible fear procedures, and pursuing removal. The district court lacked authority to enjoin Petitioners' removal or otherwise interfere with aspects of the removal process which Congress sought to protect through §§1252(g) and (b)(9).

For all of these reasons, the district court lacked jurisdiction to review Petitioners' claims.

### B. Petitioners are Subject to Expedited Removal as Aliens "Arriving in" the United States.

Petitioners do not dispute that 8 C.F.R. §§1.2 and 235.3 authorize expedited removal for certain "arriving aliens" like themselves who have been paroled at ports of entry. *See* Pet.Br.28. Instead, they claim these regulations exceed DHS's statutory authority. *Id.* at 28-39. That is incorrect because 8 U.S.C. §1225(b)(1)(A)(i) authorizes expedited removal of aliens "arriving in the United States," which includes Petitioners.

As an initial matter, Petitioners incorrectly assert that "the district court's Designation Provision ruling stands unchallenged as an independent, alternative ground for affirmance," apart from the "Arriving in" authority. *See* Pet.Br.27. Petitioners have it backwards. The Designation Provision and "Arriving in" Provision are two *independent* grounds of statutory authority for DHS to apply expedited removal—the Government need only to prevail on one of these authorities. Thus, it is sufficient for the Government to show Petitioners fall within the "Arriving in" authority.[5] And it has done so here.

[5] As noted in the Government's opening brief, the Government does not rely on the Designation Provision in this case, Gov't.Br.40 n.4, though the Government notes their disagreement with Petitioners' arguments (continued . . .)

1. Starting with their textual argument, Petitioners point to a neighboring provision which defines applicant for admission, 8 U.S.C. §1225(a)(1), and posit that Congress's "choice" to use the term "arrives" in that provision (instead of the present participle, "arriving") is meaningful, but fail to explain why. Pet.Br.29. There is simply no implication that can be drawn from that distinction that supports Petitioners' position. And while Petitioners claim "context" is important in interpreting a statutory term, *id.*, they ignore the immigration and statutory context of the term "arriving"—which strongly indicates Congress was referring to a status and not just a historical event (the alien's physical arrival). *See* Gov't.Br.31-32. Indeed, Petitioners appear to concede that "arriving alien" is a "term of art" that is "status-based," which supports the Government's position. *See* Pet.Br.33.

---

regarding that Provision. *See* Pet.Br.27. As Petitioners themselves recognize, the only Circuit to address this specific question and issue a published decision has found that plaintiffs in that case had not demonstrated they were likely to succeed in arguing that the Designation Provision applies to aliens paroled at ports of entry where their parole has terminated. *See id.* at 38 (discussing *Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025)).

2. Further, Petitioners give short shrift to the Government's arguments regarding the text of the parole statute and the nature of parole. Parole "allows the Government to pause the inspection at the border and defer it to a later time without having to detain the alien pending a final admissibility decision." *Blanche v. Lau*, 609 U.S. ---, 2026 WL 1791339, at *3 (June 23, 2026). Thus, "a paroled alien is legally equivalent to an alien that is held in custody at the border while their application for admission is processed." *Duarte v. Mayorkas*, 27 F.4th 1044, 1059 (5th Cir. 2022). The parole statute states clearly that parole "shall not be regarded as an admission." 8 U.S.C. §1182(d)(5)(A). Petitioners aver that this language "does not answer the 'arriving in' question at all." Pet.Br.30. Not so. That language is the basis of the well-established "entry fiction"—a critical background principle in interpreting the term "arriving in." *See Leng May Ma v. Barber*, 357 U.S. 185, 188 (1958). As part of the entry fiction, a paroled arriving alien remains "'an applicant for admission *coming or attempting to come* into the United States at a port-of-entry' even if, in actuality, a paroled alien has already physically come into the United States." *Duarte*, 27 F.4th 1059-60 (emphasis added). Thus, Petitioners have the status of an alien

"arriving in" the United States for purposes of §1225(b)(1). This is also "why a parolee normally fits the regulatory definition of an 'arriving alien'" at 8 C.F.R. §1.2. *Id.* at 1059.

Petitioners suggest the entry fiction is no longer applicable, reasoning that "arriving in" is IIRIRA's "own new coinage" and replaced the prior "entry/exclusion vocabulary." Pet.Br.30-31. But the entry fiction doctrine remains alive after IIRIRA, as the Supreme Court itself has recognized. *See DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("[A]liens who arrive at ports of entry—*even those paroled elsewhere in the country for years pending removal*—are treated for due process purposes as if stopped at the border.") (emphasis added) (citation omitted).

3. Petitioners fail to rebut the Government's statutory history arguments demonstrating Congress's awareness of the term "arriving" as used in the context of "exclusion" proceedings prior to IIRIRA. The exclusion cases inform the interpretation of "arriving in" by demonstrating the scope of procedural rights afforded paroled arriving aliens in the former exclusion proceedings. Paroled "arriving aliens" were afforded fewer procedural protections than those who had already

entered because their parole was not considered to be an "entry" under the exclusion statute. *Leng May Ma*, 357 U.S. at 186-88. Similarly, because aliens paroled at ports of entry post-IIRIRA are not considered to have effected an entry and have not been admitted, it follows that Congress intended the expedited removal process to be sufficient due process. Petitioners fail to explain why Congress would change this decades-old approach, or at least why it would do so without more clarity.

In particular, Petitioners fail to grapple with the fact that under the former exclusion statute an immigration officer had authority "to determine whether an *arriving alien* who had been detained for further inquiry … shall be allowed to enter or shall be excluded and deported." 8 U.S.C. §1226(a) (1994) (emphasis added). Immigration judges (in exclusion proceedings) and courts (on habeas review) concluded that aliens paroled at ports of entry were properly subject to exclusion proceedings because their parole was not an "entry." Gov't.Br.34-37. Thus, such aliens necessarily fell within the former term "arriving;" otherwise they would not qualify for exclusion proceedings in the first place as "arriving alien[s]." *See* 8 U.S.C. §1226(a) (1994). The "old soil" canon applies to support the Government's position.

Petitioners respond that Congress's use of the term "arriving alien" in nearby statutes supports their interpretation. *See* Pet.Br.33-35 (citing 8 U.S.C. §§1225(a)(2), (c)(1)). They reason that because Congress used the phrase "aliens arriving in the United States" in §1225(b)(1)(A)(i) instead of "arriving aliens," that somehow shows Congress intended to *exclude* aliens paroled at ports of entry from expedited removal, even though for decades before 1996 courts found that such aliens were properly subject to the former exclusion proceedings. Pet.Br.33-34. But Petitioners offer no authority to support their theory that there is any meaningful difference between these two phrases in terms of encompassing aliens paroled at ports of entry. *See United States v. Arredondo-Martinez*, No. 10-525, 2011 WL 13196331, at *6 (C.D. Cal. 2011), *aff'd*, 492 F. App'x 823 (9th Cir. 2012) (involving aliens paroled at ports of entry and stating there is "no material difference" between the two phrases; concluding such aliens are properly subject to expedited removal under the "Arriving in" authority). Thus, there is no negative implication from Congress's use of "Arriving in." *See* Pet.Br.34.

4. Nor does the expedited removal statute's structure advance Petitioners' interpretation. *See* Pet.Br.29-30. The Designation and

"Arriving in" Provisions are separate sources of authority. Congress excluded *currently* paroled aliens from the Designation Provision, but the absence of an equivalent exclusion from the "Arriving in" Provision does not support Petitioners' position or the district court's analysis. To the contrary: Congress demonstrated that it knew how to exclude aliens—and *did not* exclude parolees from the "Arriving in" Provision. The exclusion of such aliens in the Designated Provision has a very specific purpose, which is to preclude the designation of an alien for expedited removal *for the duration of the alien's parole*, but not after parole is terminated. Further, the Designation Provision covers an entire class of aliens—those who entered without inspection and cannot show they have been physically present in the United States continuously for two years prior to the date of the determination of their inadmissibility—that do not fall within the "Arriving in" Provision; thus, Petitioners' surplusage argument fails as well. *See* Pet.Br.30.

5. Finally, Petitioners' various other arguments do not move the needle. First, Petitioners miss the mark in responding to the Government's argument that the district court erred in relying on 8 C.F.R. §212.5(e)(2)(i), entitled, "Termination of Parole." *See* Pet.Br.31; *see*

*also* Gov't.Br.37-39. The Government does not claim §1225(b)(1) "always applies" to require expedited removal, *id.*; rather the point is that the regulation authorizes expedited removal as an *option* for aliens paroled at ports of entry once their parole is terminated. This shows the agency understood it has such statutory authority and undermines the district court's analysis. *See* Order, RE 26, PageID # 416.

Petitioners' further complaint that the Government's position would lead to an "absurd result" by treating parolees worse than aliens who illegally enter and have been in the United States for more than two years (Pet.Br.31), ignores that Congress can choose to balance the burdens and benefits of immigration law as it sees fit; and here, Congress granted many benefits to parolees, including not accruing unlawful presence, and, in some cases, being eligible for work authorization, *see* 90 Fed. Reg. 13611, 13612 (Mar. 25, 2025)—benefits that generally do not apply to aliens who enter illegally. Further, two judges of the D.C. Circuit have rejected a similar argument explaining that "[p]arolees enter on the condition and with the understanding that they remain legally at the border." *Make the Rd. N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313, at *23 (D.C. Cir. Nov. 22, 2025). "Any connections they make within the

United States are with the knowledge of their unentered status, and so they develop no reasonable expectations or reliance interests based on their continued presence." *Id.* Moreover, because parolees have been processed at the border, there is "a lower risk of erroneous removal" from expedited removal. *Id.* at *24.

Regarding the designation history (Pet.Br.32), while the Government disagrees that the language in those designations reveals anything about the application of the Designation Provision to paroled arriving aliens, that issue is not relevant here because DHS is not relying on the Designation Provision as its source of authority in this case. *See supra* at 20 n.5. In any event, the language in the designation preambles simply parrots the statute and the preambles do not address the scope of the Designation Provision's authority to apply expedited removal to paroled arriving aliens. *See* 84 Fed. Reg. 35409, 35414 (July 23, 2019). In contrast, the Rule terminating parole for the CHNV population clearly contemplates that the Designation Provision applies to paroled arriving aliens. *See* 90 Fed. Reg. 13619.

Lastly, Petitioners' claim—that DHS did not apply expedited removal to paroled arriving aliens prior to 2025 to the same extent as

after 2025 (Pet.Br.32)—is irrelevant, especially given that it ignores the fact that Administration priorities change. Once the current Administration canceled certain parole programs, there were hundreds of thousands of aliens without a lawful basis to remain in the country. Given differing enforcement priorities, Petitioners fail to explain why it is accurate to compare the number of aliens paroled at ports of entry subject to expedited removal at one point in time versus another point without considering the change in enforcement priorities, or why that has any relevance at all.[6]

## II. The Remaining Equitable Factors Tip Heavily in the Government's Favor.

A. Petitioners offer little resistance to the Government's arguments that the district court erred in finding irreparable harm. *See* Pet.Br.40-41. The district court provided two bases for its finding, neither of which are supported by the record. *See* Order, RE 26, PageID # 417-18.

---

[6] DHS did, in fact, apply expedited removal to paroled arriving aliens prior to 2025. *See Arredondo-Martinez*, No. 10-525, 2011 WL 13196331, at *1, *4; *Cordon-Linarez v. Garland*, No. 3:24-cv-00488, 2024 WL 4652824, at *1 (M.D. Pa. 2024), *appeal pending*, No. 24-3068 (3d Cir.); *Corrales-Gonzalez v. Emmerich*, No. 24-CV-638-WMC, 2025 WL 1638423 (W.D. Wis. 2025); *Obregon-Calcedo v. Thompson*, No. 25-1048, 2025 WL 1805464, at *1 (D.N.J. 2025).

First, Petitioners do not assert that the district court found a constitutional violation regarding expedited removal but instead contend the irreparable harm finding "rested on a reasoned likelihood-of-success finding on the *statutory authority question*." Pet.Br.41 (emphasis added). But that was not the basis of the district court's finding, and Petitioners cannot substitute a post-hoc reason to defend the district court's analysis. *See* Order, RE 26, PageID # 417-18.

Further, although Petitioners do not rely on *Make the Road New York*, 805 F. Supp. 3d 139 (D.D.C. 2025), the district court cited that decision in its irreparable harm analysis. Order, RE 26, PageID # 417. That decision, however, was recently reversed and vacated by the D.C. Circuit, which concluded that the plaintiffs there were unlikely to establish a constitutional violation from the expansion of expedited removal in the 2025 Designation. *Make the Rd. N.Y. v. Mullin*, 179 F.4th 16, 34-38 (D.C. Cir. 2026). Moreover, the court noted that "removal alone cannot constitute the requisite irreparable injury," *id.* at 25 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Nor can Petitioners defend the district court's second justification— "Returning individuals to a place where they *will be* persecuted or

tortured constitutes irreparable harm." Order, RE 26, PageID #418 (emphasis added). Petitioners argue that the "credible-fear records document specific, individualized threats" (Pet.Br.41), but the problem is that the district court failed entirely to explain its finding that Petitioners "*will be* persecuted or tortured"; it also overruled the agency on this fact-specific issue, which it lacked authority to do in the first place. *See Thuraissigiam*, 591 U.S. at 107 (no jurisdiction over credible fear determinations). Further, Petitioners fail to engage with the Government's argument that the agency properly followed Circuit precedent in finding Petitioners did not establish a credible fear. *See* Pet.Br.41. Petitioners' attempt to distinguish the Circuit cases the Government cited as arising in a different posture, *see id.*, is meritless; the asylum law principles that the agency relied upon apply in both the credible fear and merits-adjudication contexts. 8 U.S.C. §1225(b)(1)(B)(v) (defining credible fear of persecution); *see also* 8 C.F.R. §208.30(e)(2), (3).

B. Petitioners brush aside the harm to the Government and the public interest, stating the Government has "identified no meaningful harm." Pet.Br.41. But the district court's decision undermines DHS's enforcement interest "to expedite the removal … of aliens who

indisputably have no authorization to be admitted to the United States. ....” *See* H.R. Rept. 104-828 at 209 (1996) (Conf. Rep.); *see* Gov’t.Br.45-46 (discussing *Nken*, 556 U.S. at 436 (“There is always a public interest in prompt execution of removal orders[.]”) and other cases)).

## III. Petitioners Provide no Reason Why the Court Should not Vacate the District Court’s Detention Holding and Remand if the Government Prevails on Jurisdiction or the Merits.

Vacatur of the district court’s detention holding and remand is warranted if the Government prevails on the expedited removal question. The district court recognized DHS would have authority to detain Petitioners pursuant to 8 U.S.C. §1225(b)(1) without bond hearings if they were properly subject to expedited removal. Order Granting TRO, RE 15, PageID #333 (“Undoubtedly, mandatory detention correlative to expedited removal does not violate due process.”). However, because the district court ruled incorrectly that Petitioners were likely to prevail on their interpretation of the “Arriving in” Provision, it assumed DHS’s detention authority was pursuant to 8 U.S.C. §1225(b)(2), and that a bond hearing was constitutionally required. Order, RE 26, PageID #419-26. If the Court, however, agrees with the Government, either on jurisdiction or the merits of the expedited removal question, it should

remand to the district court for further proceedings consistent its opinion.[7]

Petitioners' position on this issue is somewhat unclear; but they appear to argue only that the district court was correct in ordering a bond hearing based on its ruling that DHS lacked statutory authority to apply expedited removal. *See* Pet.Br.42-44. They do not oppose remand on the detention issue if the Court finds otherwise.

**CONCLUSION**

The Court should reverse the district court's preliminary injunction, vacate its detention ruling, and remand for further proceedings consistent with the Court's opinion.

Respectfully submitted,

/s/ *Papu Sandhu*
PAPU SANDHU
*Assistant Director*
U.S. Department of Justice,
Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station

BRETT A. SHUMATE
*Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
(202) 514-2000
TYLER BECKER
*Counsel to the Assistant Attorney General*

[7] The Government does not argue the detention issue is moot. *See* Pet.Br.46-48. Petitioners are correct that the Government chose to release them when ordered by the district court to either release them or provide bond hearings. *See id.*

Washington, DC 20044
(202) 616-9357

U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dated: July 28, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2026, I electronically filed the foregoing reply brief with the Clerk of the Court for the United States Court of Appeals for Sixth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Papu Sandhu*
Papu Sandhu

Dated: July 28, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because:

1. This brief contains 6,366 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(ii).

2. The brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

/s/ *Papu Sandhu*
Papu Sandhu

Dated: July 28, 2026